J. D. SMITH v. S. A. DAFFIN, *et al.*

155 So. 658.
Opinion Filed June 14, 1934.

*Wm. W. Flournoy* and *John H. Carter* and *John H. Carter, Jr.,* for Appellant;

*Carter & Pierce,* for Appellees.

DAVIS, C. J.—This was a suit for injunction brought by certain taxpayers of Jackson County to restrain the payment and the making of provision for payment to appellant, J. D. Smith, of any money on a certain contract that Smith had consummated with the County Commissioners concerning the building of the State Road Department of approaches to Victory Bridge across the Apalachicola River.

The pleadings show that insofar as Smith, the appellant, is concerned, the contract on his part was fully executed prior to the institution of the taxpayer's suit for injunction. It is also made to appear that by the execution of such contract on Smith's part, the taxpayers of Jackson County received an actual benefit of $109,494.92 through this amount of saving on the cost of constructing approaches which would have been borne by the County of Jackson had Smith not successfully performed his undertaking under the contract to "induce or compel" the State Road Department to comply with an alleged agreement it had made to finish the Victory Bridge by building the disputed approaches in accordance with the original plans of the State Road Department.

The Circuit Court entered the following decree, from which this appeal has been taken:

"This cause coming on for final hearing upon the pleadings and the evidence, and the Court having heard the argument of counsel for the respective parties and being now advised of its opinion;

"It Is Ordered, Adjudged and Decreed, That the equities are with the Complainants and that the Complainants are entitled to the relief prayed for in the Bill of Complaint. The Court finds that the contract entered into between the Board of County Commissioners of Jackson County, Florida, and the Defendant, J. D. Smith, dated December 12, 1922, a certified copy of which contract is attached to the bill of complaint marked Exhibit "A," and the Power of Attorney executed by the Board of County Commissioners of Jackson County, Florida, dated December 12, 1922, purporting to appoint the Defendant, J. D. Smith, Attorney in Fact for the County of Jackson, a certified copy of which Power of Attorney is attached to the

Bill of Complaint marked Exhibit "B," were each entered into by the said Board of County Commissioners without authority of law, and are each invalid because they are each unauthorized by the laws of Florida, and are each beyond the powers of the said Board of County Commissioners.

"The Court finds that there were no representations made by the defendant, J. D. Smith, to said Board of County Commissioners to induce the making of the contract as alleged in the Bill, but that the said Board and the defendant, J. D. Smith, acted in good faith in making the same.

"It Is, Therefore, Ordered, Adjudged and Decreed, That the said instruments are each null and void, and the Defendants, Lee M. Gause, as Chairman, H. E. Shores, Lee McMillan, J. T. Sapp and O. L. Olive, as members of and constituting the Board of County Commissioners of Jackson County, Florida, and their successors in office be, and they are hereby forever enjoined and restrained from levying any taxes on the real and personal property in Jackson County, Florida, with which to pay the defendant, J. D. Smith, any sum of money under or on account of said contract and from paying said Defendant any sum of money under or on account of said contract, and that the Defendant, J. D. Smith, be, and he is hereby forever enjoined and restrained from receiving from the said Defendants, Lee M. Gause, as Chairman, H. E. Shores, Lee McMillan, J. T. Sapp and O. L. Olive, as members of and constituting the Board of County Commissioners of Jackson County, Florida, and their successors in office, any sum of money under or on account of said contract.

"It Is Further Ordered, Adjudged and Decreed, That the Complainants do have and recover of and from the Defendants, Jackson County and J. D. Smith, in equal proportions the costs of this suit as taxed by Order of this

Court, the Court reserving jurisdiction of this cause for the purpose of taxing said costs, and ordering execution therefor.

"ORDERED, ADJUDGED AND DECREED, at Chambers, Chipley, Washington County, Florida, by the Judge of the Ninth Judicial Circuit of Florida, sitting in the place and stead of the Judge of the Fourteenth Judicial Circuit of Florida, disqualified, this September 26, 1930.

"D. J. JONES,

"Judge Ninth Judicial Circuit of Florida."

Whatever may have been the nature of enforceability of the contract in its executory status is immaterial to the disposition of the present appeal. Here this Court has before it a suit brought with regard to the executed contract against the officials of the county and one who performed his contract after he had contracted with it in good faith and without fraud as the Chancellor below in his final decree expressly found. It is established also by the pleadings and by the evidence that not only was the contract here brought in question entered into in good faith and performed in all conscientiousness and fidelity on Smith's part, but that its performance has been accepted by the county officials and by such performance and acceptance of same, the County of Jackson has received an actual benefit of $109,494.92, through the activities and performance of the contract by Smith according to the terms agreed upon which were made a matter of record at the time and were presumably well known to the inhabitants and citizens of Jackson County.

Courts of equity discourage *laches* and delay in the enforcement of rights. This is so because of the general principle that nothing can call forth a court of chancery into activity but conscience, good faith and reasonable diligence on the part of those who invoke its aid. Where these

are wanting, a court of equity will remain passive and do nothing toward granting the complainant relief, even though he might have been entitled to the very relief he seeks had he acted with reasonable diligence. *Laches* is not like the statute of limitations a mere matter of time. *Laches* is principally a question of the inequity of permitting a claim to be enforced by equitable remedies in the face of a change in the conditions or relations of the parties occasioned by a delay that works a disadvantage to him against whom equitable relief is sought. When a court of equity see negligence on one side and injury therefrom on the other it is ground for denial of equitable relief.

*Laches* applies to suits in equity for injunction when brought by taxpayers against alleged authorized, but non-fraudulent transactions or contracts that have been entered into by public officers when and after such contracts have in good faith been fully executed with resultant benefit to a political subdivision, though unauthorized by law in the first instance and capable of being enjoined when in an executory stage, or during the course of performance.

After a contract made by a citizen with a county has been fully and fairly performed by him in good faith with resultant benefit to the contracting county, which the county has paid nothing for, a court of equity should not lightly interfere with it by injunction at the suit of taxpayers brought after the contract has been fully executed, where the challenged contract stipulates for nothing that is *malum in se* or *malum prohibitum,* and is not made a means of disguising a corrupt scheme as the real nature of the underlying transaction involved, even though the same contract in its executory stages would have been enjoined at the suit of taxpayers as being against public policy because of its

supposed evil nature and tendency as a so-called "lobbying" contract.

The actual and full performance of personal services of some value under a contract contemplating acts not *malum prohibitum* or *malum in se* for a county's benefit, may give rise to a right to recover against the county for the reasonable worth of the personal services rendered and accepted by it under the contract as executed, even though a stipulation set forth in the contract providing for a specified percentage or specified amount cannot be enforced because the contract may be deemed contrary to public policy as one in the nature of a "lobbying" contract.

In the present case Smith contracted to "induce or compel" the State Road Department to carry out what Jackson County contended was the State Road Department's enforceable legal duty under an agreement the Department had made with Jackson County at an earlier date. Smith was successful in his efforts and the contract was performed by him in all respects in full prior to the institution of the present suit to enjoin the payment to Smith of $10,949.94 as his agreed compensation under the contract as written. Prior to the time the contract was entered into there was no judicial decision in this State denouncing such contracts as being "contrary to public policy." Nor was the contract prohibited by any statute of this State, nor fraudulent nor dishonest in purpose as a matter of fact.

Under such circumstances a majority of the Court are of the opinion that the taxpayers' injunction suit which is the subject of the present appeal, was barred by the *laches* of complainants in waiting until long after the underlying contract was fully executed by appellant Smith before they sought to enjoin paying him any of his agreed compensation under it, no excuse for the delay being pleaded or

shown. Such being the case, the perpetual injunction prayed for in the bill should have been denied and the bill dismissed without prejudice to any right of action or defense the parties to the disputed contract itself might be in position to assert as between themselves in an action at law.

The decree appealed from is reversed and the cause remanded for appropriate proceedings consistent with this opinion.

WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN, J., and THOMAS, Circuit Judge, dissent.

BUFORD, J., disqualified.

BROWN, J. (dissenting).—I agree with the majority that the contract was made and carried out in good faith; that there was no misrepresentations made, nor any dishonesty on either side; but I nevertheless believe that the Board of County Commissioners were without legal authority to make such a contract, and I have grave doubts, also, that the contract is enforceable in an action at law, as being contrary to public policy. See Burke v. Child, 88 U. S. 441, 22 Law Ed. 623; Providence Tool Co. v. Norris, 69 U. S. 45; 17 Law Ed. 868. As this particular contract appears to have been innocent in itself, and resulted in benefit to the County, I have been reluctant to reach the above stated conclusion. But having done so, I cannot do otherwise than hold that the decree of the lower court should be affirmed.

THOMAS, Circuit Judge (dissenting).—The transaction which gave rise to this suit, as it is unfolded by the pleadings and the proof, is:

Victory Bridge had been constructed by the State Road Department across the Apalachicola River, but the approach where the bridge entered Jackson County had not been completed. The bridge was accessible only by using a temporary ramp which impeded traffic. Much time had been

consumed by the County Commissioners in attempting to induce the State Road Department to build a permanent approach. These efforts had been unavailing.

On December 12, 1922, the then County Commissioners entered into a contract with the appellant which in substance authorized him to take steps "legal or otherwise" to "induce or compel" the State Road Department to finish the bridge by building the approach in accordance with the original plans of the department. The entire expense of his efforts were to be borne by him. If he accomplished nothing there was to be no expense to the county. If he succeeded he was to receive a sum equal to ten per cent. of the expenditure, established by the vouchers of the department. He succeeded. The vouchers totaled $109,494.92, and he claimed $10,949.49 for his services which the Commissioners were willing to pay, but from the payment of which they were enjoined.

Nothing whatever appears from the record to indicate that the transaction was not one entered into with the utmost good faith by all parties and executed in the same fashion.

The legal impediment presented and insisted upon by appellees, S. A. Daffin, C. N. Horne and J. L. Carroll, is that the County Commissioners were without authority to aid in the construction of a State road without a vote of the people approving the expenditure.

This Court has been repeatedly committed to the proposition that a county can make expenditures only where authority is expressly given, or may be implied from an express power. Payne v. Washington County, 25 Fla. 789, 6 Sou. 881; National Bank of Jacksonville v. Duval County, 45 Fla. 496, 34 So. 894. Indeed, counsel for the parties seem to agree upon this principle.

The powers given County Commissioners by statute are defined in Section 2153, C. G. L. 1927, and those pertaining to roads appear in paragraphs one, five, ten and thirteen.

They were given by law enacted before the State Road Department was created as also were the ones in Section 2436 C. G. L. 1927.

By Section 1662 C. G. L. 1927, the counties were empowered to aid in the construction of State highways where approved by the vote of the people.

Under a special Act (No. 7493) passed in 1917 Jackson County was authorized to issue $30,000.00 in time warrants to pay that county's share of the cost of the bridge.

It seems quite clear that any authority for the expenditure in paying for appellant's services under the contract must be found in the statutes numbered 2153, and 2436, 1662 or the special Act. In this search I find nothing to support the claim. The fact that the project was one of the State eliminates the first and second; the absence of any endorsement by the people makes the third inapplicable; and the fourth was authority only for the issuance of $30,000.00 in time warrants which have already been used for the purposes for which they were issued.

The courts have frowned on such contracts as was executed by appellant and the County Commissioners. The Supreme Court of the United States, in the case of Providence Tool Company v. Norris, 17 L. Ed. 868, condemned them as being contrary to public policy "without reference to whether improper means are contemplated or used in their execution." The suit was for commissions from the sale of muskets to the War Department. The same court passed on a claim for services as lobbyist in Burke v. Child, 22 L. Ed. 623, and held that such would not be countenanced by the courts. True, these decisions are in cases

where individuals or corporations were involved, but certainly the Board of County Commissioners should not be placed on a lower plane.

The appellant doubtless effected the expenditure of over a hundred thousand dollars by the State Road Department in the construction of Victory Bridge, and he did so without the least suspicion of improper motive or illegal tactics. Beyond question, too, he performed a great service for Jackson County. Unfortunately he falls in that class of persons who must suffer because to aid him the law would open an avenue for corruption in the handling of public affairs.

Appellant undertook to influence a board which had the discretion of spending the people's money where it saw fit in the maintenance and construction of a highway system. As compensation for his services he was to receive a fee contingent on the amount he could induce the board to spend, the only possible limitation being the "original plans and specifications calling for a concrete approach." The facts, as they appear from record, seem more strongly to support the principle of law enunciated in the decisions above cited than do the facts reported in those cases. This was not a matter of paying the necessary expenses of the Board of County Commissioners to confer with the State Road Department about the county's roads. It was practically a *carte blanche* to one who had no official status commissioning him to go forth and procure for his principal, a political division of the State, as much as he could, the while being spurred by the knowledge that the more he secured the more he would personally receive.

This is a dangerous policy to which I cannot subscribe. I am of the opinion the Board of County Commissioners acted without authority in the first instance and in the

second that such contracts being viewed without sympathy by the courts in the cases of employment of such agents by individuals, should receive, certainly, no more consideration where public corporations are concerned.

The exception to the rule appears to be that where the contract is for "purely professional services," Burke v. Child, *supra,* it is valid, but the work appellant was to perform did not fall in this category.

I conclude: That the county had no authority to contribute to the building of the approach and that the contract between appellant and the county was invalid.

For these reasons I cannot agree with the majority of the Court that the decree should be reversed.

BROWN, J., concurs.