WHITE, JOSEPH S., Associate Judge, Retired.
In this case plaintiffs have appealed from a final summary judgment dismissing their complaint. The judgment was entered upon defendants’ motion, plus certain discovery depositions and affidavits filed in conjunction with the hearing on the motion.
The complaint, filed in February, 1966, sought to impose a constructive trust on certain shares of stock held by defendants in a corporation, or in the alternative, upon treasury shares held by the corporation itself. It was alleged that the defendants had engaged in fraudulent conduct when they negotiated the transfer of certain other shares in the same corporation to plaintiffs.
The defendants affirmatively defended in the trial court by pleading that the plaintiffs were estopped because of the doctrine of laches and the statute of limi *784 tations. The basis for this defense was the fact that the plaintiffs did not commence their lawsuit until February, 1966. Upon defendants’ motion for summary judgment, the trial court dismissed the complaint. This appeal has been taken to test the correctness of the court’s ruling. We do not find it necessary to discuss that part of the ruling which was premised on the statute of limitations; instead, we affirm the summary judgment on the basis of the doctrine of laches.
The negotiation in question which led to the transfer to plaintiffs took place during August, 1962. More than a year prior to this date, the defendants had re-organized the capital structure of the corporation by creating an issue of no par common stock with voting rights. They retained for themselves 15% of the authorized shares of the new stock issue.
The negotiations between the parties which took place during August, 1962, came about when the corporation became indebted to the plaintiffs and other creditors in such large amounts that it appeared to be insolvent and faced bankruptcy. Defendants, being in control of the affairs of the corporation, explained the situation to plaintiffs with the proposal that bankruptcy might be averted if plaintiffs would accept stock in the corporation in payment of their claims against the corporation. This was agreed to and the transfer of stock was consummated. Subsequently, due to defendants’ efforts, the corporation was rehabilitated and is presently in a more prosperous position.
In their complaint filed in the lower court more than three years later, the plaintiffs contended that they were entitled to relief because defendants engaged in fraudulent conduct by failing to disclose during the negotiations that they had acquired their stock on the basis of “three shares for every dollar of contributed capital whereas the plaintiff-creditor class received one share for every $3.00 of contributed capital.” In this connection, it is important to remember that defendants acquired their stock in the capital re-organization which occurred more than a year prior to the negotiations now in question.
The question of laches on plaintiffs’ part was raised when defendants asserted that plaintiffs had stood by for more than three years, during which time, relying on plaintiffs’ acceptance of the stock, defendants had devoted their efforts and resources to the rehabilitation of the corporation.
As we view the record, the parties were dealing at arms’ length. We must note that at the time in question, when plaintiffs were being asked to give up their position as creditors and become stockholders instead, and when good business procedure would have demanded it, they made no request to examine corporate records for information which they could use in order to assess the value of the stock as compared to the value of their claims.
The record now before this court presents a classic example of laches. See 12 Fla.Jur. Equity, § 89; 21 Fla.Jur. Limit, of Actions, § 92. Plaintiffs neglected in the first place to exercise ordinary precaution in analyzing their bargain. The record irrefutably shows that several of the chief plaintiffs had occupied relationships with the corporation, which allowed them access to the intimate workings of the corporation, viz., principal money lender, corporate attorney and director. Yet, they showed little interest then in those matters about which a careful investor would have inquired. Next, they waited more than three years to complain during which time a “change of conditions” had taken place, namely, a favorable turn in the business of the corporation. We conclude, as did the lower court, that the doctrine of laches operates to bar relief. The equitable rule governing this situation is well stated in Smith v. Daffin et al., 115 Fla. 418, 155 So. 658:
“Laches is principally a question of the inequity of permitting a claim to be *785 enforced by equitable remedies in the face of a change in the conditions or relations of the parties occasioned by a delay that works a disadvantage to him against whom equitable relief is sought. When a court of equity sees negligence on one side and injury therefrom on the other, it is ground for denial of equitable relief.” Id. at 660.
See also Travis Co. v. Mayes et al., 160 Fla. 375, 36 So.2d 264.
Affirmed.