## THE STATE OF FLORIDA v. THE CITY OF MIAMI

26 So. (2nd) 672    June Term, 1946
June 18, 1946    En Banc

*Glenn C. Mincer,* State Attorney, and *S. O. Carson,* Assistant State Attorney, for appellant.

*J. W. Watson, Jr.,* for appellee.

BROWN, J.:

This is an appeal from a decree rendered by Circuit Judge Carroll, of the 11th Judicial Circuit on May 29th, 1946, validating the issuance by said City of $1,300,000 of Stadium revenue bonds. The City's petition was in due form. It showed among other things that the City of Miami had acquired and constructed and now owns and operates and maintains a stadium known as the Miami Field Stadium located at Miami Field, within the corporate limits of the City of Miami. This stadium is not large enough to care for the demands made upon it and there is a great demand for additional seats, and the City, by these proceedings, is seeking to issue $1,300,000 of Stadium Revenue Bonds which will provide, when sold, the necessary funds to double-deck said stadium, providing approximately 22,800 additional seats, as well as to retire $92,000 Stadium Bonds outstanding and $74,900 outstanding in certificate indebtedness, neither of

which are presently due and owing and are payable solely from the revenues of the stadium. The petition alleged that authority is conferred upon the City by Chapters 19980 and 19982, Special Laws of 1939, to construct, reconstruct, extend, repair and replace its stadium and to issue revenue bonds of the City of Miami payable solely from the revenues to finance such improvement and to fix, charge and collect, fees, rents and other charges for the use of such stadium. By the terms of the City's duly adopted resolution, the issuance of the said $1,300,000 City of Miami Stadium Revenue Bonds, will not constitute a debt of the City or a pledge of the faith and credit of the City, but will be payable exclusively from said special fund provided therefor from revenues of the stadium, and the issuance of the bonds will not directly or indirectly or contingently obligate the City to levy or to pledge any form of taxation whatever for their payment or to make any appropriation therefor, and the City will have no power to levy or to pledge any form of taxation whatever in payment of the principal of and interest on the bonds.

An answer was filed by the State Attorney which denied the right of the City to issue these Stadium Revenue Bonds and that the issuance of the said Stadium Revenue Bonds will violate Amended Section 6 of Article IX of the Florida Constitution for the reason that the issuance of the said revenue bonds have not been approved by a majority of the votes cast at an election in which the majority of the freeholders who are qualified electors residing in the City of Miami have participated, and that petitioner is not authorized to sell said Stadium Revenue Bonds at private sale.

A great deal of evidence was taken before the chancellor indicating the need and advisability of the enlargement of said Miami Stadium, and that the revenue bonds would be self liquidating and perhaps largely paid in advance of the due dates from the revenues of the stadium solely, which revenues would be adequate to pay said bonds.

Chapter 19,980 and 19,982, Special Laws of 1932 authorize the City to enlarge and improve said Miami Field Stadium in the manner provided for in the resolution. These two acts were held to be valid in the case of State v. City of Miami, 146

Fla. 266, 200 So. 535. The authorizing resolution and the bonds themselves do not and will not constitute a debt of the City or pledge of the full faith and credit of the City, and will not directly or indirectly or contingently obligate the City to pledge or impose any form of taxation whatever.

This Court, commencing with State v. City of Miami, 113 Fla. 280, 152 So. 6, has repeatedly held that the provisions of amended section 6 of Article IX of our constitution are not violated by the issuance, without an election, of revenue certificates or bonds of a municipality, when such bonds are issued for the purpose of making repairs, improvements or extensions of a municipal facility and are made payable solely from the revenues of such project. Both the resolution and the bonds themselves in this case provide that these bonds will not be deemed to constitute a debt of the City of Miami, or a pledge of the faith and credit of the City, and will not obligate the City to levy or pledge any form of taxation for their payment.

A large amount of testimony was taken before the chancellor which showed the great need for the double-decking of the present stadium, that there was a great demand for additional seats, not only for the Orange Bowl game, but for the more important games played by the University of Miami. The present seating capacity is about 36,000 seats. The double-decking of the stadium, which is of steel construction, will afford 22,800 additional seats. The evidence showed that there had been an increase in the net income of the stadium except during the war years. For instance, the gross income for the year ending June 30, 1945 was $58,134.38 and that the income for the present year is $88,777.00, which is about $54,000 greater than it was in the first year of its opening which was 1938. It is estimated that the total annual revenues, after the proposed improvements are made, will approximate $175,000, while the operating expenses and debt service requirements, including this issue, will be approximately $132,000 annually which shows with reasonable certainty that these revenue bonds will be self liquidating. Heretofore the actual cost of maintenance and operation has never exceeded $23,000 for any one year, but the estimated

operation and maintenance cost, with these increased facilities, is estimated at around $50,000.

It is true that this Court in the case of Charles v. City of Miami, 125 Fla. 110, 169 So. 589, refused to validate $162,000 of Stadium Revenue certificates, payable from the revenues of the stadium to be constructed with the proceeds of the sale of the bonds. We think that case can be distinguished from the present case, because in this case the City is proceeding under a different statute or statutes, hereinabove referred to. Furthermore, the stadium has now been constructed and in use for some eight years, and its existence has passed the experimental stage, and the evidence indicates that the future revenues will be more than ample to pay these revenue bonds, a part of the proceeds of which will be issued to retire the outstanding bonds. Thus the matter before the court at this time provides for an extension and an enlargement of a present existing facility, as well as for the protection of what the City now has. This Court in its recent decisions had consistently sustained self liquidating bonds, such as those involved in this case, for the making of improvements and extensions to an existing facility, when such bonds or certificates, are payable solely from the revenue of such facilities. These elements were lacking at the time the case of Charles v. City of Miami was decided. Furthermore, at that time, express legislative authority had not been granted such as was afforded by the enactment of the statutes of 1939 above referred to.

The resolution makes provision for the sale of the stadium bonds at private sale. The completion of the new facilities for use in the next foot ball season is shown by the evidence to be most desirable and the delay attendant to a public sale and the advertisement thereof would definitely preclude that possibility. The private bidder is a local concern and has agreed to an interest rate of 3 percent, one per cent less than the rate on the outstanding bonds. Under the arrangement made with the local bidder the bonds are to be delivered and paid for at such times and in such quantities as may be required to meet the cost of construction, which will eliminate the possibility of interest being paid on unproduc-

tive bonds proceeds lying idle because of construction delays. Under said Chapter 19,982, the bonds may be sold in such manner and for such price as the City Commission may by resolution determine to be for the best interest of the City, and Section 12 of the resolution permits the sale of the bonds at private sale without competitive bidding to certain named banks, at the full par value plus accrued interest to date of delivery, and with interest at the rate of 5 per cent per annum, but that this declaration of intent and authorization shall not preclude the City from making other disposition of the bonds upon other terms should the said private sale not be consummated.

In the case of State v. City of Miami, 150 Fla. 270, 7 So. 146 which dealt with the issuance by the city of hospital revenue bonds payable solely from the income of municipal hospitals as extended, the Circuit Judge held that the City Commission was fully authorized to sell said revenue bonds at public or private sale as the Commission may deem advisable, under the provisions of Chapter 19,980 and 19,982, Laws of 1939, above referred to. That decree was affirmed. Counsel for the State admit that Chapter 19,982, contains a provision that "The bonds may be sold in such manner and for such price as the City Commission of the City of Miami may by resolution determine to be for the best interest of the City," etc. But counsel for the State contend that inasmuch as a portion of the bonds here involved are to be used to retire or refund the outstanding stadium bonds, the general refunding law, Chapter 132.09, which provides for publication of notice of sale, should be complied with. Our view is, however, that Chapter 19,982 authorizes the resolution of the City providing for a private sale of these bonds. Such was the holding of the Circuit Judge who rendered a very thorough decree reviewing all of the material questions involved.

The decree appealed from is accordingly

Affirmed.

CHAPMAN, C. J., TERRELL, BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.