**STATE OF FLORIDA v. COUNTY OF DADE, FLORIDA by its Board of County Commissioners acting as Dade County Port Authority.**

27 So. 283                                               June Term, 1946
August 8, 1946                                               En Banc

860

*Glenn C. Mincer,* for appellants.

*Hudson & Cason* and *J. Mark Wilcox,* for appellee.

TERRELL, J.:

This appeal is from a decree validating revenue bonds proposed to be issued by appellee in the sum of $2,500,000, pursuant to the provisions of Chapter 22963, Acts of 1945, the title to which is as follows:

"AN ACT Relating to Counties of and County Commissioners in Counties Having a Population of 260,000 Inhabitants or More According to the Latest Federal Census and Their Powers in General and In Particular in Relation to Ports,

Harbors, Airfields and Other Projects and Making Same a County Purpose."

It is first contended that Chapter 22963 is violative of Section 21, Article III of the Constitution, in that the classification of counties by population has no reasonable relation to the subject regulated and, being so, the proposed bonds are without legal authority.

The pith of this contention is that Chapter 22963 is, to all intents and purposes, a local law and was not advertised as Section 21, Article III of the Constitution requires. If, however the classification by population has some reasonable relation to the subject regulated, the challenge based on Section 21, Article III, is overcome. State v. Board of County Commissioners of Orange County, 147 Fla. 278, 3 So. (2nd) 360, Crandon et al. v. Hazlett, decided May 31, 1946, not yet reported.

The classification here is predicated on counties having a population of 260,000 or more. It may be admitted that Dade County is at present the only county within that class, but it may as well be admitted that other counties are potentially within the designated classification. Whether all counties are potentially within it is not material. The scope and effect of the subject regulated is the material thing and determines the validity of the Act.

To effectuate the purpose authorized, the Board of County Commissioners of Dade County was designated the Dade County Port Authority and by resolution accepted the burden imposed on it. Pursuant to authority vested in it as such, it entered into an agreement with Pan American Airways, Inc., to purchase Pan American 36th Street Airport in Dade County. A consideration of $2,500,000 for said purchase was agreed on, and to pay this amount, the Dade County Port Authority agreed to issue $2,500,000 of revenue bonds, payable solely from revenues to be derived from the operation of the airport, and Pan American Airways, Inc., agreed to purchase said bonds as par in payment for the airport. A resolution to issue the bonds was adopted, and a petition to validate them was filed in the Circuit Court, to which was attached copy of a trust agreement executed by the Dade County Port

Authority, pledging the revenues derived from the operation of the airport to the payment of principal and interest of the bonds.

The main purpose of Chapter 22963 relates to the purchase, construction, improving, extending, maintaining, repairing, operating, issuing bonds for, and exercising such other duties as pertain to ports, harbors, airfields, and other projects of like import. Can it be said that such projects have no proper relation to counties that are now or may hereafter reach the 260,000 population bracket? In City of Coral Gables v. Crandon, 157 Fla. 71, 25 So. (2nd) 1, we upheld a similar population Act relating to the conservation of water supply. The Act in question deals with airports and accessories, but this Court knows that air transportation is one of the great innovations of the age, that Miami is potentially one of the greatest air distribution points in the World, and that Florida is the port of entry for air transportation from South and Central America, the West Indies, and Africa. It is quite true that there were no Jules Verns or Wright Brothers in the Constitutional Convention to portend the marvelous changes the future had in store, but it was not intended by those present that the dead hand of the past should shape the destiny of the future. Constitutional mandates are wise in proportion to the manner in which they respond to the public welfare and should be construed to effectuate that purpose when possible. The law does not look with favor on social or progressive stalemates. As we said in City of Coral Gables v. Crandon, supra, extension of political controls should keep pace with physical changes, and collective ingenuity should not be hobbled by the Constitution in a way to be outclassed by collective design to overreach and serve a selfish purpose.

Section 21, Article III of the Constitution, has to do with acts of the Legislature that are strictly local in import and application. Its object was to put those affected by them on notice of their passage. Chapter 22963 deals with instrumentalities that are far from local in their out-reach—they are statewide and international in their potentialities. It would be difficult to name an instrumentality that more vitally affects public transportation than the airport. The population

bracket is an arbitrary one, but that was in the discretion of the legislature to choose. From ancient times the crossroads of the world, great caravan crossings, great water transportation centers, great railroad distribution points, great air terminals, and great trade emporiums have induced large populations. There must be a basis in the Constitution to classify such population areas, to foster their objectives, and bring about more effective governmental supervision.

It is next contended that the bonds in question should not be validated because the trust agreement pledging the revenues derived from the operation of the airport to the payment of the bonds is violative of Section 655.27, Florida Statutes of 1941, in that it designates the National City Bank of New York to act as trustee and perform the duties of a trustee thereunder.

Paragraph 5 of Section 655.27 is relied on to support this contention. The effect of paragraph 5 is to limit the appointment of trustees under any deed of trust conveying or encumbering real estate or tangible personal property, given to secure bonds or other evidences of indebtedness, to banks and trust companies organized under the laws of Florida.

The trust agreement in question does not encumber any real estate or tangible personal property. It pledges certain rents and income from the airport to the trustee and directs their disposition and use for retirement of the bonds. The National City Bank is, in other words, more in the nature of a stakeholder to receive and pay out certain funds in the manner directed by its appointment in the trust agreement. We find no inhibition to this procedure in Section 655.27, Florida Statutes of 1941.

The third, fourth, and fifth questions relate to the power of the Dade County Port Authority to issue the revenue bonds in question payable solely from revenues derived from the operation of the airport and whether or not said bonds are payable solely from said revenues or may constitute general obligations of Dade County.

Section 2 (Sub-section 7) of Chapter 22963 authorizes the Board of County Commissioners to issue revenue bonds for the development of any project contemplated or undertaken

by the Act. The power to issue the bonds is plenary, and the manner in which their issue was undertaken is not challenged.

The bonds in terms provide that they shall be paid solely from revenues derived from the operation of the airport and shall not constitute an obligation of the county. No other means is provided for their payment. Ample methods are provided for collection of the rents and the administration of the airport. The bonds are by their terms strictly revenue bonds and constitute no obligation whatever against the county, and there is no theory under which the holders may look to the county to impose taxes or use any other county funds to pay them.

It is, therefore, our view that the classification complained of in Chapter 22963, Acts of 1945, was proper; that it does not violate Section 21, Article III of the Constitution; that the revenue bonds in question were duly authorized; and that they can, in no sense, be construed as general obligations of Dade County. So the decree of the Chancellor is in all respects affirmed.

Affirmed.

CHAPMAN, C. J., THOMAS, ADAMS, and SEBRING, JJ., concur.

BROWN and BUFORD, JJ., dissent.

BUFORD, J.:

At its regular session of 1945 the Legislature of Florida enacted Chapter 22963, the title to which is as follows:

"An Act Relating to Counties of and County Commissioners in Counties Having a Population of 260,000 Inhabitants or More According to the Latest Federal Census and Their Powers in General and in Particular in Relation to Ports, Harbors, Airfields and Other Projects and Making Same a County Purpose."

Subparagraphs 1, 3, 7, 8, 11 and 12 of Section 2 of the Act are as follows:

"1. To construct, acquire, establish, improve, extend, enlarge, reconstruct, equip, maintain, repair, and operate any project as herein defined either within or without the territorial boundaries of the county.

"3. To acquire, by grant, purchase, gift, devise, condemnation, exchange, or in any other manner, all property, real or personal, or any estate or interest therein, upon such terms and conditions as the said County shall by resolution fix and determine;

"7. To issue revenue bonds payable solely from revenues, to pay all or a part of the cost of acquisition, construction, extension, enlargement, improvement or modernization of any project, and to pledge the revenues to secure the payment of bonds, but such bonds shall not bear interest to exceed five per centum (5%) per annum;

"8. For the purpose of paying all or a part of the cost of a project, to issue certificates or indebtedness or bonds secured by purchase money mortgage lien upon the title to the real or personal property constituting a project, but neither shall bear interest at a rate exceeding five per centum (5%) per annum;

"11. To fix, regulate and collect rates and charges for the services and facilities furnished by any project under its control and to impose sanctions to promote and enforce compliances; and to prescribe rules and regulations and impose penalties and sanctions to insure the proper performance of the duties of any stevedore or of any such shipping master and the enforcement of any rule or regulation which the County may adopt in the regulation of the ports, harbors, wharves, docks, airports and other projects under its control.

"12. To fix the rates of wharfage, dockage, warehousing, storage and port and terminal charges for the use of the port and harbor facilities located within or without said County and owned or operated by said County, to fix and determine the rates, tolls and other charges for the use of harbor and airport improvements and harbor and airport facilities located within or without said County insofar as it may do so under the Constitution of the State of Florida and the Constitution and laws of the United States of America;"

Pursuant to the powers purported to be conferred by this Act the Board of County Commissioners of Dade County, Florida, (Dade County Being the only County in the State

which by reason of its population came within the purview of the Act) on September 14, 1945, adopted a resolution accepting the powers, duties and obligations conferred and imposed by the Act upon the Board of County Commissioners and provided by resolution that in the performance of the said powers, duties and obligations said Board should be known and designated as Dade County Port Authority. Thereafter, acting under the purported authority of the said Act, the Board of County Commissioners of Dade County, Florida, acting as Dade County Port Authority, entered into a purchase agreement with Pan American Airways Inc. for the purchase of the airport in Dade County, Florida, known as the Pan American 36th Street Airport. By the purchase agreement Dade County Port Authority agreed to pay Pan American Airways Inc. and Pan American Airways Inc. agreed to accept approximately $2,500,000.00 for said airport and its facilities. By the terms of the agreement Dade County Port Authority proposed to issue $2,500,000 of revenue bonds payable solely from the revenues to be derived from the operation of the airport and Pan American Airways Inc. agreed to purchase the said bonds at par, thus providing the funds with which the Port Authority would pay Pan American Airways Inc. for the purchase of said airport and its facilities.

The necessary documents to carry out the agreement were executed by the parties and deposited in escrow in the National City Bank of New York to await validation and issuance of the proposed revenue bonds.

On April 11, 1946, Dade County Port Authority filed in the Circuit Court of Dade County its petition for the validation of the bonds. Attached to the petition were copies of all contracts, deeds and assignments and also a copy of the resolution of Dade County Port Authority authorizing the issuance of the bonds, as well as copy of the proposed trust indenture to be executed by Dade County Port Authority pledging the revenue to be derived by the Dade County Port Authority from the operation of the Airport to the payment of the principal and interest of the bonds.

An order to show cause was entered by the Court and was published as required by law.

On April 30, 1946, answer of the State's Attorney to the petition for validation was filed.

On May 2, 1946, the Circuit Court of Dade County entered final decree validating the said airport revenue bonds in the sum of $2,500,000.00. The State's Attorney perfected appeal to this court to review Order of validation.

The appellant has presented 5 questions for our determination, which have been disposed of in the majority opinion. In this dissenting opinion we shall only deal with the first question, which is as follows:

"Is the provision of Chapter 22963, Laws of Florida (1945) limiting the application of said Chapter to counties having a population of 260,000 inhabitants or more, according to the latest Federal Census a reasonable and proper classification of the counties of the State of Florida for the operation of said Chapter as a General Law, and is said Chapter a valid General Law of the State of Florida?"

It is well settled that if the subject matter of the Act and the public purpose to be effectuated thereby bear no reasonable relation to a classification by population upon which it rests, even though it be passed under the guise of a General Law, it is, in fact, a local law. See Anderson v. Board of Public Instruction, 102 Fla. 695, 106 So. 334; S. A. L. Ry. Co. v. Simon, 56 Fla. 545, 47 So. 1001; Crandon et al. v. Hazlett, _____ Fla. _____, _____ So. _____ (not yet reported).

We can find no reasonable ground or basis for the population classification here indulged. As we see it, there can be no basis in reason for conferring the powers, duties and obligations upon only counties and the Board of County Commissioners of counties having a population of 260,000 or more, as is attempted by this Act. In other words, the selection of the population bracket of 260,000 or more appears to be an adoption except that it was intended that the provisions of the arbitrary classification, having no basis in reason for its Act should apply to only one county in the State of Florida.

The factual conditions in this case and the factual conditions involved in the case of City of Coral Gables v. Crandon, 157 Fla. 71, 25 So. (2nd) 1, are materially different. There the Act in question was upheld because the classifica-

tion on the basis of population had a reasonable basis in the subject regulated, the subject being the conservation of the natural water supply incident to the area involved. But here there is no such subject involved.

Having decided that the classification invoked by the statute is arbitrary and has no reasonable basis in its relation to the subject matter, it follows that we must hold the statute to be a local and special act.

The record shows that the legislative Act was not adopted in conformity with amended Section 21 of Article III of the Constitution of Florida.

The pretended authority to issue the bonds here sought to be validated is to be found only in Chapter 22963, supra, and as that Act is invalid because it is a local Act and was not enacted in conformity with the provisions of the Constitution, supra, the issuance of the bonds is unauthorized.

We do not express any opinion as to whether or not the Act would have been invalid had its enactment been in accordance with the provisions of amended Sec. 21 of Article III of our Constitution because that question is not now before us for disposition.

BROWN, J., concurs.