52 So.2d 125 (1951)
STATE
v.
ESCAMBIA COUNTY.
Supreme Court of Florida, en Banc.
April 17, 1951.
*126 J. Edwin Holsberry, Pensacola, for appellant.
Yonge, Beggs & Lane, Pensacola, and Mitchell & Pershing New York City, for appellee.
CHAPMAN, Justice.
On January 15, 1947, the United States of America conveyed to the County of Escambia, of the State of Florida, a described tract of land situated on Santa Rosa Island and comprising some 4800 acres, more or less. Written into and made a provision of the aforesaid deed was that the County of Escambia shall retain and always use the same for such purpose "as it shall deem to be in the public interest or be leased by it from time to time in whole or in part to such persons and for such purposes as shall be deemed in the public interest." Escambia County, under the conditions of said conveyance, is authorized to convey the described property back to the Federal Government or to the State of Florida or any agency thereof.
Situated on the aforesaid lands conveyed to Escambia County are attractive beaches. If adequate facilities were afforded for the use of the beaches the Santa Rosa Island beaches could be used as a recreational center for the general public now residing *127 in the Escambia County area, and, additional thereto, would if developed attract many tourists at all seasons of the year to the area, thereby promoting the business and economic interests of the community. Accordingly, the Legislature of the State of Florida enacted Chapter 24500, Special Acts of 1947, Laws of Florida. This Act provides for the development of the project and authorizes the issuance of revenue certificates to accomplish the purposes provided for therein. It creates an agency functioning under the direction of the Board of County Commissioners to supervise and manage the development thereof.
Section 2 of Chapter 24500, supra, authorizes Escambia County to develop many projects to be located on Santa Rosa Island in behalf of the public interest. Subsection (2) of Section 2 of Chapter 24500 authorizes the County of Escambia "to purchase, construct, extend, improve, own, maintain, insure and operate, either itself or by contract or lease with individuals, firms or corporations, all or any of the following: Toll or free bridge or bridges across Santa Rosa Sound and any other waters or swamps and lowlands adjacent to or a part of the Island; boats and car ferries to and from the Island; ports, harbors, airports for land or seaplanes, and shipping and airport facilities on the Island or elsewhere in connection with service to and from the Island; board walks, sea walls, breakwaters, bulkheads, causeways, wharves, docks, piers, yacht basins and jetties; sewerage systems, water systems, fire fighting systems and equipment, power lines and cables, gas systems and any other utilities desirable or convenient for the development and service of the Island and persons, businesses and improvements thereon; streets, roads, alleyways, sidewalks and other public ways; parks, playgrounds, recreation and amusement buildings and centers, bathing beaches, bath houses, swimming pools, auditoriums, theaters, churches, houses of worship, pavilions, athletic fields, golf courses, and other buildings and places of all kinds for the assembly, entertainment, health, welfare and recreation of the public; hotels, restaurants, eating places, cottages, homes, dwellings, tourist camps and other places of lodging and eating places of all kinds, taxi cabs, busses and transportation systems; office and store buildings, warehouses, depots, stations, and all other kinds of business or commercial properties; administration buildings and offices for use of the County Commissioners or the Authority."
The Board of County Commissioners of Escambia County, Florida, under Subsection (4) of Section 2, supra, is granted the power to borrow money and issue revenue bonds or certificates for the purpose of defraying costs of purchasing, acquiring, constructing or improving the property. The bonds or certificates so issued shall not be construed to be a debt of the County of Escambia or the State of Florida. The Act further provides that the obligations so issued and sold shall be retired or paid from the revenues derived from the operation of the improvements, projects and things, or one or more of them, situated on the lands conveyed to Escambia County, which may be pledged to retire or pay the same.
Pursuant to law, the Board of County Commissioners of Escambia County, Florida, on November 20, 1950, adopted a resolution authorizing the issuance of revenue bonds designated "Santa Rosa Island Facilities Revenue Bonds" in the amount of $1,220,000.00. The bonds are to be dated October 1, 1950, in denominations of $1,000.00 each, bearing interest at the rate of 4% per annum, due and payable on the first days of April and October of each year. The bonds to be issued will mature annually in designated amounts beginning in 1953 and continuing through the year 1970. The money arising from the sale of the aforesaid bonds shall be used or applied only to the objects or projects designated in the aforesaid resolution and none other.
The record reflects obligations now outstanding and previously issued by Escambia County and the Santa Rosa Island Authority and the proceeds therefrom used in the purchase or development of designated projects on Santa Rosa Island. The Board and Authority acquired: (1) the Pensacola Beach Casino, Inc., at a cost of $124,000.00; (2) effected a cancellation of a lease of a portion of the Santa Rosa Island property as held by the Southern Caterers, Inc., *128 at a cost of $4,500.00; (3) the sum of $125,000.00 has been expended in financing the subdividing and grading of a portion of the Santa Rosa Island and the construction of streets and other improvements thereon. The indebtedness supra is to be refinanced out of the proceeds of the sale of the $1,220,000.00 worth of revenue bonds and the Board intends to utilize the remaining amount of the issue in the additional and further improvement of the Pensacola Beach Casino so that it will be attractive to the tourist trade and to provide facilities to house and accommodate all visitors to the recreational center.
Petitioner-appellee filed in the Circuit Court of Escambia County, under the provisions of Chapter 75, F.S.A., its petition praying for a decree of validation of the certificates of indebtedness and attached thereto, and by appropriate allegations made a part of the petition, was a copy of the resolution adopted by the Board of County Commissioners of Escambia County, Florida, dated November 21, 1950. An order was made by the Circuit Court upon the filing of the petition as prescribed by the provisions of Section 75.05, F.S.A. An answer was filed, a hearing was had in the court below on the issues made by the pleadings, and on final hearing a decree of validation was entered. The State of Florida appealed.
The State of Florida contends on this appeal that the lower court erred in striking from the record on the ground of their legal insufficiency the following portions of the amended answer of the State of Florida addressed to the petition praying for validation of the bonds:
"4. This Respondent further answering says that said Santa Rosa Island Facilities Revenue Bonds will be invalid for the reason that the purposes for which said bonds are proposed to be issued are not authorized purposes, including specifically the purpose of providing funds for retiring the outstanding notes, the outstanding certificates and the outstanding bonds described in paragraphs VI, VII and VIII, respectively, of said Petition, since the Act contains no authority to issue refunding bonds, and also as to which Outstanding Obligations it is not shown that they were duly authorized and issued, particularly since the purpose of issuance of certain of the Outstanding Obligations for acquisition of property interests, such as the casino, and the manner of such acquisition, were not authorized by the Act, and also particularly since the Outstanding Obligations were issued by, and purport to be obligations of, both the Authority and the Board of County Commissioners jointly, contrary to the provisions of the Act which expressly prohibit delegation by the County of its bond issuing power to the Authority and which expressly reserve such power exclusively in the Board of County Commissioners.
"5. This Respondent further answering says that the issuance of said Santa Rosa Island Facilities Revenue Bonds under the provisions of said Resolution No. A-1, 1950 will violate the provisions of amended Section 6 of Article IX of the Florida Constitution [F.S.A.] for the reason that said bonds will constitute a debt of the County of Escambia and the issuance thereof has not been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in the County of Escambia participated.
"6. This Respondent further answering says that the Act violates the provisions of Section 10 of Article IX of the Florida Constitution for the reason that said Act authorizes the County of Escambia to obtain money for and to loan its credit to private individuals, associations and corporations and the construction of the Project for which said Santa Rosa Island Facilities Revenue Bonds are authorized to be issued will benefit primarily private individuals, associations and corporations and is not a public purpose, and that the County is therefore without power or authority at law to issue said bonds for such construction.
"7. This Respondent further answering says that the construction of said Project is not a proper County purpose, and that the County of Escambia is therefore without power or authority at law to issue said Santa Rosa Island Facilities Revenue Bonds for such construction.
*129 "8. This Respondent further answering says that the provision of the Act exempting from state, county, municipal and all other ad valorem taxes of every kind all of the real and personal property owned, controlled or used by the County of Escambia or the Santa Rosa Island Authority under or by virtue of said Chapter 24500, Special Laws of Florida 1947, or for any of the purposes thereof, including real and personal property rented or leased to others by said County or said Authority, violates Section 1 of Article IX of the Florida Constitution for the reason that said property, the revenues of which are pledged by said Resolution No. A-1, 1950 under the authority of the Act to the payment of said Santa Rosa Island Facilities Revenue Bonds, is not to be used for municipal, education, literary, scientific, religious or charitable purposes.
"9. This Respondent further answering says that the provisions of the Act authorizing and requiring the County Commissioners to delegate to and vest power and authority in the Santa Rosa Island Authority to exercise, do and perform the authority, powers, duties, acts and things therein prescribed with reference to the Santa Rosa Island Facilities are invalid and violate Article II of the Florida Constitution in that said provisions constitute an unlawful delegation to said County Commissioners of legislative powers vested by Section 1 of Article III of the Florida Constitution in the Legislature of the State of Florida.
"10. This Respondent further answering says that the members of the Santa Rosa Island Authority are County Officers, and that the Act, in providing that they shall be appointed by the County Commissioners in place of providing for their election by the people or their appointment by the Governor, violates Section 27 of Article III of the Florida Constitution."
It is contended, first, that the County of Escambia is without power to issue the Santa Rosa Island Facilities Revenue Bonds in part for the purpose of refunding the outstanding obligations previously issued jointly by the County of Escambia and the Santa Rosa Island Authority. The answer to this contention is that the Legislature by inference conferred the power and authority so to do on the County of Escambia and the Santa Rosa Island Authority. See Chapter 24500, Special Laws of Florida 1947, as amended by Chapter 25810, Special Laws of Florida 1949, and Chapter 26422, Laws of Florida, Extraordinary Session 1949; State v. City of Miami, 155 Fla. 180, 19 So.2d 790, 1 A.L.R.2d 132.
The second question presented here is, will the Santa Rosa Island Facilities Revenue Bonds constitute a debt of the County of Escambia within the inhibitions of the provisions of Section 6 of Article 9 of the Constitution of Florida? It will be observed that the Resolution adopted by the Board, the three Acts, supra, under which the same was adopted, and the validation decree provide that the bonds and interest shall be paid only from the revenues of the certificates of indebtedness. The taxing power of Escambia County is in no manner pledged or obligated for the payment of these certificates. See Rowe v. City of Fort Lauderdale, 142 Fla. 746, 196 So. 199; State v. Dade County, 146 Fla. 331, 337, 200 So.2d 848; State v. Florida Keys Aqueduct Commission, 148 Fla. 485, 4 So.2d 662; State v. Alachua County, 154 Fla. 1, 16 So.2d 288; State v. City of Miami, 157 Fla. 616, 26 So.2d 672.
The third question posed for adjudication is, will the revenue bonds issued under the provisions of Chapter 24500, Special Laws 1947, as amended by Chapter 25810, Special Laws 1949, be for a public purpose and not constitute a loan of credit of the County of Escambia within the inhibitions of Section 10 of Article 9 of the Florida Constitution? The grants of power conferred by Chapter 24500 on the Board of County Commissioners in the development of the Santa Rosa Island Authority are made County purposes. See Section 1 of Chapter 25810, Special Acts 1949. Similar recreational facilities of various descriptions have been held public purposes. Zinnen v. City of Fort Lauderdale, 159 Fla. 498, 32 So.2d 162; Schmeller v. City of Fort Lauderdale, Fla., 38 So.2d 36; State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218; State v. Dade County, Fla., 39 So.2d 810; *130 State v. Dade County, 157 Fla. 859, 27 So.2d 283.
The fourth question presented is, is the construction of the project for which revenue certificates are to be issued a proper County purpose? The answer to this question is Section 1 of Chapter 25810, Special Acts of 1949. See State ex rel. Harper v. McDavid, 145 Fla. 605, 200 So. 100, 133 A.L.R. 360; Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648; State v. Dade County, 157 Fla. 859, 27 So.2d 283.
Is the provision of Chapter 25810, Special Laws 1949, exempting from state, county, municipal, and all other ad valorem taxes on real and personal property owned, controlled or used by the County of Escambia or the Santa Rosa Island Authority as authorized by Chapter 24500, Special Laws 1947, violative of Section 1 of Article 9 of the Florida Constitution? The Legislature decreed that the Santa Rosa Island Authority project was a county purpose. The Legislature has the power to make such findings, subject to judicial review. See Saunders v. City of Jacksonville, supra; City of Fernandina v. State, 143 Fla. 802, 197 So. 454; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402; Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145.
Questions 6 and 7 are viz.:
"6. Do the provisions of said Chapter 24500, as amended, authorizing and requiring the County Commissioners to delegate to and vest power and authority in the Santa Rosa Island Authority to exercise, do and perform the authority, powers, duties, acts and things therein prescribed with reference to the Santa Rosa Island Facilities constitute an unlawful delegation to said County Commissioners of legislative powers vested by Section 1 of Article III of the Florida Constitution in the Legislature of the State of Florida, in violation of Article II of the Florida Constitution?"
"7. Are the provisions of said Chapter 24500, as amended, for the appointment of the members of the Santa Rosa Island Authority by the County Commissioners valid provisions which do not violate Section 27 of Article III of the Florida Constitution?"
We have considered the authorities cited by counsel pro and con going to the merits of the above questions. It is our view that each of them is without merit. We fail to find error in the record.
Affirmed.
SEBRING, C.J., and TERRELL, THOMAS, ADAMS, HOBSON and ROBERTS, JJ., concur.