**CAMP, et al v. TAX ASSESSOR, et al.**
No. 71-3366.
Circuit Court, Escambia County.
May 19 and 30, 1972.

Patrick G. Emmanuel of Holsberry, Emmanuel, Sheppard, Mitchell & Condon, Pensacola, for plaintiffs.

J. B. Hopkins, Pensacola, for the defendant Tax Assessor.

Jack H. Greenhut, Pensacola, for the defendant Board of County Commissioners.

Baya Harrison, III, Assistant Attorney General, for the defendant Director of Department of Revenue.

Edward T. Barfield of Hahn, Reeves & Barfield, Pensacola, for the defendant Board of Public Instruction.

ERNEST E. MASON, Circuit Judge.

*Declaratory judgment and permanent injunction, May 19, 1972:* The plaintiffs are leaseholders from the Santa Rosa Island Authority, an agency of Escambia County, of properties located on Santa Rosa Island which is situate in said county. They have instituted this suit against the tax assessor of Escambia County, the tax collector of Escambia County, the board of public instruction of Escambia County, the board of county commissioners of Escambia County, and the director of the Florida department of revenue. They seek relief by way of declaratory judgment and injunction to prevent the tax assessor from assessing their leasehold interests, to enjoin and restrain the board of county commissioners and the board of public instruction of Escambia County from levying ad valorem taxes on said leasehold interests, and to enjoin and restrain the tax collector and director from collecting or attempting to collect ad valorem taxes on such leasehold interests. The suit is before the court on the complaint of the plaintiffs and the answers of the several defendants.

The attorney for the defendant designated as board of public instruction of Escambia County suggests to the court that under the provisions of §230.12, Florida Statutes, its proper name is "the school board of Escambia County." All pleadings herein are, therefore, amended to designate said defendant according to its proper statutory designation.

The defendant tax assessor has answered, stating to the court that he must assess properties as required by law and he seeks the pronouncement of this court as to his legal duty and obligation with respect to the leasehold interests in question. The defendant tax collector has filed no defensive pleadings and default judgment has been entered against him herein.

The other defendants, namely, the board of county commissioners of Escambia County, the director of the department of revenue, and the school board of Escambia County, have each filed answers denying the relief sought by the plaintiffs and alleging that because of the provisions of chapter 71-133, Laws of Florida (chapters 192 and 196, Florida Statutes, 1971), the leasehold interests of the plaintiffs are subject to ad valorem taxation.

The cause is before the court on final hearing upon the pleadings aforesaid, the evidence presented by the parties, the stipulation as to certain facts signed by counsel for the several parties and the extensive briefs filed with the court. We hold that the leasehold

interests in question are not subject to ad valorem taxation, and that the defendants are estopped from imposing ad valorem taxes upon the same, and in support of such holding, make the following findings of law and fact —

(1) All of the plaintiffs are holders of leasehold interests in property owned by Escambia County, situate upon Santa Rosa Island in said county. One of the plaintiffs, namely, J. F. Marques, Jr., is the owner of revenue bonds issued by Escambia County for the purpose of securing funds to exercise the powers and acquire and construct improvements authorized by the Special Acts hereinafter referred to. All of the leases held by the plaintiffs are for 99 years' duration with the exception of one, which is for a term of 25 years. All of the leases owned by the plaintiffs were executed prior to the enactment of chapter 71-133, Laws of Florida, Acts of 1971, and, of course, prior to the effective date of said act which was December 31, 1971.

(2) Escambia County secured title to that portion of Santa Rosa Island which was under the jurisdiction of the Department of the Interior by deed of conveyance of the United States of America, dated January 15, 1947. In the deed it is provided that the land conveyed shall be retained by Escambia County and "be used by it for such purpose as it shall deem to be in the public interest, or be leased by it from time to time in whole or in part or parts to such persons and for such purposes as it shall deem to be in the public interest and upon such terms and conditions as it shall fix and always to be subject to regulation by said county whether leased or not leased, but never to be otherwise disposed of or conveyed by it."

(3) In 1947 the legislature of Florida, by chapter 24,500, authorized the county commissioners in behalf of the county to use such property acquired by it from the United States for such purposes as it shall deem to be in the public interest, or from time to time to lease the property in whole or in part or parts to such person or persons and for such purposes as it shall deem to be in the public interest, and upon such terms and conditions and for such periods of time as it shall fix, but always subject to regulation by the county, whether leased or not leased.

The Act authorized the county commissioners to purchase, contract, improve, own, maintain and operate, either directly or by way of contract or lease, facilities and improvements upon the property aforesaid, including bridges to and from the island, board walks, bulkheads, wharves, docks, piers, sewerage systems, water systems, fire fighting systems, gas systems and other utilities desirable or convenient for the development or service of the island and

all persons, businesses or improvements thereon; streets, roads, sidewalks and other public ways; parks, playgrounds, recreation and amusement buildings and centers, bathing beaches, bath houses, swimming pools, auditoriums, theatres, houses of worship, athletic fields, golf courses and other places designed for the assembly, entertainment, health, welfare and recreation of the public; hotels, restaurants, cottages, homes, dwellings, tourist camps, and other places of lodging and eating places of all kinds and transportation systems; office and store buildings, warehouses, depots, stations and all other kinds of public or commercial properties and administration buildings for the use of the county commissioners or the authority acting in behalf of the latter.

The Act further authorized the county commissioners to acquire by grant, purchase, gift, devise, condemnation or in any other manner all property, real or personal, or estate or interest therein, necessary, desirable or convenient for the purposes of the Act, and to sell, convey, lease, rent or assign all or any part thereof.

The Act also authorized the board of county commissioners to construct improvements upon the island of the character above enumerated and to issue revenue bonds secured by revenues derived from the operation or rental of any such improvements.

The Act further authorized the board of county commissioners to advertise the island or any of the improvements, projects or things therein in connection therewith in such manner as it deemed advisable.

The county commissioners are authorized by the Act to make such rules and regulations as are necessary to promote health and safety upon the island and to enforce all such reasonable rules and regulations by appropriate legal or equitable remedy.

The power to make all contracts, enter into all necessary agreements, execute all instruments and to do all things necessary, desirable or convenient to carry out the powers, duties and purposes granted and stated in the Act, is specifically granted to the board of county commissioners.

The county commissioners are specifically authorized by the Act to delegate the powers granted to it by the Act to an agency to be known as the Santa Rosa Island Authority.

(4) By chapter 25,810 the legislature in 1949 determined and declared that all of the powers conferred upon the board of county commissioners of Escambia County and upon the Santa Rosa Island Authority, or either of them, by the 1947 Act (Chapter 24,500), and the exercise of such power or any of them constitute and are county purposes.

(5) And by chapter 25,810 the legislature declared that "all of the real and personal property owned, controlled or used by Escambia County, Florida, or Santa Rosa Island Authority, under or by virtue of chapter 24,500, or for any of the purposes thereof, including real and personal property rented or leased to others by said county or said Santa Rosa Island Authority, shall be exempt from state, county, municipal, and all other ad valorem taxes of every other kind."

(6) By chapter 26,422, Acts of 1949, the legislature, in effect, re-enacted chapter 24,500, Acts of 1947, and further increased the power and authority of the board of county commissioners of Escambia County to borrow money and issue negotiable revenue certificates, to carry out the powers so granted in a sum not to exceed the aggregate principal amount of ten million dollars.

(7) The board of county commissioners, pursuant to authority granted by the above laws, created the "Santa Rosa Island Authority" to exercise in behalf of the county the powers conferred by said laws.

(8) Pursuant to the authority granted to it by the above designated statutes, the board of county commissioners of Escambia County, in 1950, authorized the issuance of revenue bonds maturing in designated amounts annually, beginning in 1953, and continuing through the year 1970. The proceeds from the sale of said bonds were to be used in the purchase or development of designated projects on the island, including the grading of a portion of the island and the construction of streets and other improvements thereon, including facilities to house and accommodate visitors to the island. The bonds are secured and paid from charges fixed and collected from tolls, rentals and other charges for the use of and for the services and facilities furnished by the authority. These revenue bonds were validated by a decree of this court. An appeal was taken to the Supreme Court of Florida by the state of Florida, (State v. Escambia County, 52 So.2d 125), and in affirming the decree of validation the Supreme Court held, among other things, as follows

1. That the revenue bonds were issued for a public purpose and that the grants of power conferred by chapter 24,500 on the board of county commissioners in the development of the island are for county purposes.

2. That the tax exemption granted by chapter 25,810, supra, was not violative of §1 of article IX of the Florida Constitution and that the island projects were county purposes under the grant of authority by the legislature.

(9) Subsequent revenue bond issues were authorized by the county commissioners, and validated by decrees of this court, the proceeds to be used for the purpose of refunding outstanding bonds and financing the construction and acquisition of additions, extensions and improvements to the then existing Santa Rosa facilities. These subsequent issues are to be paid solely from the net revenues derived from the operation of the Santa Rosa Island facilities and improvements.

(10) Pursuant to the authority granted to the island authority approximately 750 leases have been made by such authority to private individuals, firms and corporations. The greater portion of such leases are for terms of 99 years. In each of the leases it is expressly provided that any improvements placed upon the leased property shall immediately become the property of Escambia County.

(11) The exemption contained in chapter 25,810, Acts of 1949, is preserved by chapter 61-266, General Acts of Florida, Laws of 1961, and is contained in §192.62, Florida Statutes of 1961, 1963, 1965, 1967 and §196.25, Florida Statutes of 1969.

(12) §192.011, Florida Statutes of 1969, provides that all real and personal property not expressly exempt from taxation shall be subject to taxation. §196.25, Florida Statutes, 1969, provides that any real or personal property which for any reason is exempt or immune from taxation but which is being used, occupied, owned, controlled or possessed by any person in connection with a profit-making venture, whether such use, occupation, ownership, or control is by lease, control, sale or otherwise, shall be assessed and taxed to the same extent and in the manner as other real and personal property; but that such power of taxation shall not apply to property located on Santa Rosa Island and which is owned by either of the counties of Escambia, Santa Rosa or Okaloosa, or controlled by any agency thereof, and which is used for a public purpose.

(13) §16 of chapter 71-133, now §196.001, Florida Statutes, divides the fee and leasehold interests in land for purposes of taxation, and makes leaseholds subject to taxation.

(14) That following the enactment of chapter 24,500, supra, as amended by chapter 25,810 and chapter 26,422, Escambia County, through the island authority, purchased existing recreational facilities upon the island, leased numerous parts of the island to lessees and used the funds arising from the proceeds of the revenue certificates referred to above and from the leases for the building of streets, water facilities, sewer facilities, lighting facilities, drainage facilities, parks, beach maintenance, boat ramps, recreational areas,

lifeguard facilities, and the like. Also from said rentals the authority has made payments on account of principal and interest on the revenue bonded indebtedness.

(15) The authority has plans for expanding and improving the recreational facilities in the future and to expand the sewerage treatment plant.

(16) From its inception the authority has from time to time advertised the recreational facilities and opportunities on the island and has published brochures advertising the fact that the property owned by the county and under the jurisdiction of the authority is exempt from ad valorem or real estate taxes or assessments. One of the inducements offered to prospective leaseholders was such freedom from taxation.

(17) The authority and the various lessees leasing from it, in entering into leases during the period of time prior to the enactment of chapter 71-133, each considered as part of the business negotiations relative to the same the fact that such property was exempt from ad valorem taxation. The lease rental agreements agreed to between the parties were entered into in recognition of and reliance upon, among other factors, the tax free character of the property. Such leases were entered into as a result of arm's length mutual bargaining between the parties thereto.

(18) That by representing to the public, and particularly to prospective lessees, that their leasehold interests would be tax free the authority, acting as agent for Escambia County, a governmental unit, impliedly covenanted on the part of the county that the county would refrain from imposing taxes on the leasehold estate during its term.

(19) That a major part of the consideration for the leasing of properties upon the island was the belief on the part of the lessor and lessee that the property would be free from ad valorem taxation during the term of the lease.

(20) That the use of the public beach areas and the public recreation facilities have materially increased during the past several years.

(21) That the primary purpose which the leases perform is that they provide income which supports programs of the Santa Rosa Island Authority, which includes recreational facilities to the general public. A great number of the leaseholders provide accommodations and facilities for visitors and/or tourists.

(22) That the plaintiff lessees in the exercise of their leases serve and perform a proper public purpose and function within the meaning of that term as incorporated within the provisions of the

Special Acts of 1947 and 1949, and of chapter 71-133, Laws of Florida, Acts of 1971. (State v. Escambia County, supra).

(23) The taxing authorities of Escambia County and the state of Florida have, since the enactment of chapter 25,810 in 1949 consistently granted exemption from taxation to leasehold interests in properties on Santa Rosa Island owned by Escambia County and the leaseholders of such interests have enjoyed said exemption during all of these years.

(24) The county of Escambia, through its agent the Santa Rosa Island Authority, has entered into lease contracts with the plaintiffs based upon the representation that their leasehold interests would not be taxed during the terms of their leases. As we have stated, such representation of freedom from taxation is a part and parcel of the consideration for the lease contracts. Now the taxing authorities are seeking to impair the obligation of the contracts that they have made with these lessees. Mr. Justice Holmes once stated that "Men must turn square corners when they deal with the government." This court concludes that government should be held to a like standard of rectangular rectitude when dealing with its citizens.

(25) The state of Florida and its political subdivisions are expressly forbidden by article I, §10, Constitution of the United States from enacting any ex post facto law or law impairing the obligation of contracts. To permit any taxation of the leasehold interests in question would fly in the face of this expressed prohibition. Mayhood v. Bessemer Properties, 18 So.2d 775, text 779; Fletcher v. Peck, U. S., 3 L.Ed. 162.

(26) It is the duty of this court in construing chapter 71-133 to hold the same to be constitutional, if reasonable and logical so to do. Applying this principle of statutory construction the Act must be given prospective application and so construed as not to impair the rights of the leaseholders, parties plaintiff to this suit. So construed, the statute does not operate to repeal the tax exemption granted by the legislature to the lessees herein by chapter 25,310, Laws of Florida, Acts of 1949, nor the exemption from taxation enjoyed by said leaseholders under the provisions of chapter 61-166, Laws of Florida, Acts of 1961. Any effect of the statute to authorize the taxing of leaseholds upon Santa Rosa Island and in lands owned by Escambia County must be, and is hereby construed, to authorize such taxation only of leases executed subsequent to the enactment of such chapter.

(27) The fair preponderance of the evidence does not establish that the bond contracts entered into by Escambia County with the revenue certificate holders would be impaired by the taxation of such leasehold interests.

We have not overlooked the decision of the Supreme Court in Hillsborough County Aviation Authority v. Walden, 210 So.2d 193. But we hold that such decision does not support the claim of the defendants to tax the leasehold interests in question. In *Walden* the court held that a statutory exemption did not apply to leasehold interests entered into prior to its enactment and that to the extent that it attempted to do so was unconstitutional. In the case at bar the lease contracts were entered into after the tax exemption was granted by statute and were partially induced by such exemption. In *Walden* there was no question of violation of the obligation of any contract, nor was estoppel involved. Here, as we have found, the attempt to tax the leases in question amounts to an impairment of contract in violation of article I, §10, of the United States Constitution, and the taxing authorities are, therefore, estopped to tax them.

The court, therefore, holds that the defendants are equitably estopped from assessing the leasehold interests, subject of this suit, for ad valorem tax purposes and from collecting or attempting to collect ad valorem taxes against said leasehold interests.

It is, therefore, ordered and adjudged that the provisions of chapter 71-133, Laws of Florida, Acts of 1971, do not repeal and remove the exemption from taxation granted to the plaintiff lease-holders, and that said exemption shall inure to them throughout the terms of their current leases, and said leasehold interests are not subject to assessment for ad valorem taxes or to the payment of such taxes.

It is further ordered and adjudged that the defendant, John R. Jones, as tax assessor of Escambia County, and his successors in office, are forever enjoined and restrained from assessing for ad valorem tax purposes the leasehold interests of the plaintiffs herein hitherto granted to them by the county of Escambia acting through its board of county commissioners, the Santa Rosa Island Authority, or any other agency under authority of chapter 24,500, chapter 25,810, chapter 26,422 or chapter 61-266, Laws of Florida; that the defendant, board of county commissioners of Escambia County and the school board of Escambia County, and their successors in office, are forever enjoined and restrained from levying or attempting to levy any ad valorem taxes on said leasehold interests; that the defendant, E. J. Gibbs, Jr., as tax collector of Escambia County, and his successors in office, and the defendant, Edward Straughn, as director of the Florida department of revenue, and his successors in office, are forever enjoined and restrained from collecting or attempting to collect any ad valorem taxes on said leasehold interests.

It is further ordered and adjudged that the parties hereto shall pay their respective costs.

*Order denying rehearing and order on petition for clarification, May 30, 1972:* This cause coming on to be heard upon the motion for rehearing filed herein by one of the defendants herein, namely: J. Ed Straughn, as director of the Florida department of revenue, and the court having considered the same and being advised of its opinion that it is not well founded and should be denied: it is so ordered.

Said defendant having requested the court to state whether in rendering its judgment it intended to declare chapter 71-133, Laws of Florida, Acts of 1971, unconstitutional, the court states that in rendering its judgment it held that if the statute is given retroactive application as to the rights of plaintiffs herein it is unconstitutional, and to that extent the court did pass upon the constitutionality of said act.

This cause coming on further to be heard upon the motion of said defendant for distribution of defendants' costs among the several defendants, and the court having considered said motion and being advised of its opinion that the distribution of costs between the several defendants is not a proper subject for this court's adjudication, but must be determined by the several defendants, and that said motion should be and it is denied.