LARRY G. SMITH, Judge.
Appellants appeal from a final judgment in which the trial judge ruled contrary to their requests for declaratory relief. We affirm the trial judge.
Appellants filed a complaint for declaratory relief to determine whether the appel-lees, Faddis and Keltner (F & K) held valid and enforceable leases upon portions of beach front property on Santa Rosa Island, which is owned by Escambia County, and administered by appellee, Santa Rosa Island Authority (Authority). Appellants are all leaseholders of property on Santa Rosa Island, three of them holding leases abutting and adjoining the property sought to be developed by appellees F & K. F & K are real estate developers who had certain agreements and a lease with the Authority. F & K in their answer also sought a declaratory judgment holding that their alleged rights under the agreements and lease are valid and enforceable.
There were a series of agreements between F & K and the Authority. Under a 1968 contract, F & K received authority for development of a certain portion of the Island, and the right to develop additional Island property within five years of the 1968 agreement, upon similar terms to be mutually agreed upon. In 1973, after lengthy negotiations, F & K and the Authority reached an accord concerning exactly what rights were granted to F & K under the 1968 agreement. This resulted in an agreement dated October 22, 1973, authorizing F & K, under the 1968 option, to develop an additional one-half mile tract of Island property. The validity of this agreement was challenged in litigation filed, dismissed by the trial court, and dismissal affirmed on appeal. Furnans v. Santa Rosa Island Authority, 315 So.2d 481 (Fla. 1st DCA 1975). Thereafter, in 1976, the Authority granted to F & K a lease covering one residential lot within the tract area to which F & K had previously asserted their alleged development rights (under the 1968 agreement, as confirmed by the 1973 agreement); and in addition, on November 15, 1976, an agreement between the Authority and F & K modified the 1973 agreement by limiting somewhat the extent of permissible development and also, in essence, protecting F & K from financial loss for delays incident to litigation.
This appeal presents myriad points of contention and controversy between the parties. We will consider what we conceive to be the major points and subpoints, though not exactly in the order in which they are presented in the briefs.
The first basic contention by appellants is that Chapter 24,500, Laws of Florida, 1947, the very act which breathed life into the Santa Rosa Island Authority, is unconstitutional, null and void. The original act (Chapter, 24,500) authorized the County Commissioners of Escambia County to use, lease or develop all portions of Santa Rosa Island owned by it for such purposes as deemed to be in the public interest, for public, private, residential, recreational, business and commercial use. The act also provided for delegation of authority to *MLXVI carry out the purposes of the act to a Board to be known as the Santa Rosa Island Authority, the members of the Authority to be selected by the County Commissioners. That act specifically provided that any power or authority not lawfully delegable to the Authority would remain in the County Commissioners, including the power and authority to issue revenue bonds or certificates, and to acquire property by condemnation. Chapter 70-680, Laws of Florida, 1970, made certain amendments to Chapter 24,500. The particular amendment which is of interest in this proceeding, and which forms the basis for this entire controversy, required the Authority to prepare and develop a “comprehensive land use plan” for the future development of the Island.[1]
The amendment also, in Section 5, prohibited lease of any portion of the Island property until such time as the comprehensive land use plan was prepared and approved by the County Commissioners [2].
As noted (footnote 2) the prohibition against leasing did not apply to rights acquired under unexpired options to lease or leases approved prior to the effective date of the act.
In view of the lapse of time since creation of the Santa Rosa Island Authority, and in view of the vast amount of development and improvement that has taken place over the years by means of leases granted to private parties, it is somewhat late in the day to question the legality of the Authority’s existence. We note that the act has survived at least one constitutional challenge, in the early decision of State v. Escambia County, 52 So.2d 125 (Fla.1951). In that case the contention was made that the act was invalid as constituting an unlawful delegation of powers vested in the County Commissioners, in contravention of Section 1, Article III, Florida Constitution (1885). The court found this contention to be without merit, and the validity of the act was upheld.
Appellants refer us to the case of Brandon Planning and Zoning Authority v. Burns, 304 So.2d 121 (Fla.1974), which held invalid a special act creating the “Brandon Planning and Zoning Authority”, under the provisions of Section 11(a)(1), Article III, Florida Constitution (1968)[3]. In holding the Brandon act unconstitutional, the court found that the basic purpose of the act was to remove from the Board of County Commissioners their zoning jurisdiction, conferred upon them by general law (Chapter 125, Florida Statutes) and to place that jurisdiction in the Brandon Planning and Zoning Authority. The act gave the Authority the power to enact county ordinances, and then obligated the County Commissioners or other county officers, boards or departments to comply with and enforce these ordinances. We do not interpret the Brandon decision as prohibiting the creation of authorities such as the Santa Rosa Island authority with limited powers and authorities with respect to the leasing and development of a portion of the county’s property. As appellees correctly point out, whatever infirmity might have existed in the original act, under the amendment (Chapter 70-680) the Authority was required to adopt a comprehensive land use plan, which did not become valid or final until approved by the County Commissioners. Therefore, the contention that the act vested all power and authority of the County Commissioners in the Santa Rosa Island Authority is not *MLXVII borne out by the facts. Furthermore, similar acts vesting limited powers in county agencies or authorities, particularly with respect to the control and development of certain special county properties, have long since received judicial approval. See Pinellas County Planning Council v. Smith, 360 So.2d 371 (Fla.1978).
We find no merit in appellants’ contention that provisions of the act authorizing the Authority to lease Santa Rosa Island property are unconstitutional under Section 11(10), Article III, Florida Constitution (1968). That provision of the constitution provides that there shall be no special law or general law of local application pertaining to the “disposal of public property”, for “private purposes”. Initially, we note that this point was not raised in the pleadings or argued in the court below. We also note that appellants themselves are the recipients of benefits under the very act they claim to be unconstitutional. Be that as it may, the act in question does not violate the constitution. The Island property, comprising some 4,800 acres, was conveyed by the United States of America to Escambia County in 1947. Written into and made a provision of the deed was a provision that the county “shall retain and always use the same”, for such purposes “as it shall deem to be in the public interest or be leased by it from time to time in whole or in part to such persons and for such purposes as shall be deemed in the public interest”. The short answer to appellants’ contentions is that the leasing of the Island property, for the purpose of recreational, residential and business uses, is deemed in the “public interest”. See State v. Escambia County, 52 So.2d 125 (Fla.1951), in which the court stated: ■
“Situated on the aforesaid lands conveyed to Escambia County are attractive beaches. If adequate facilities are afforded for the use of the beaches the Santa Rosa Island beaches could be used as a recreational center for the general public now residing in Escambia County area, and [in] addition thereto, would if developed attract many tourists at all seasons of the year to the area, thereby promoting the business and economic interests of the community”. (Opinion page 126).
Cases are legion which hold that the leasing of land or publicly owned facilities for the private or business purposes of the leaseholder serves a “public purpose”. The cases cited by appellant, Straughn v. Camp, 293 So.2d 689 (Fla.1974), Williams v. Jones, 326 So.2d 425 (Fla.1975), and Am Fi Inv. Corp. v. Kinney, 360 So.2d 415 (Fla.1978), relate to taxation, of the property interest represented by the leasehold estates. Of course, in taxation, it is the use made of the property that determines its taxable status. St. Johns Associates v. Mallard, 366 So.2d 34 (Fla. 1st DCA 1978). But although the use may be for purely private purposes, the leasing of the property may nevertheless constitute a valid public purpose.
Section 125.35, Florida Statutes, requiring county commissioners, prior to selling any county property, to advertise and sell the property to the highest bidder, is not applicable to the property under the jurisdiction of the Authority. The Authority is governed by the provisions of the special acts which control it, and there is no provision requiring the advertising for bids, or to enter into leases upon a “highest bid” basis.
The trial judge found that Chapter 163, the local government comprehensive planning act, was inapplicable, and we agree. As appellees point out, only counties, municipalities and special districts specifically designated in the act are required to prepare and adopt plans. Section 163.-3167(2), (3), Florida Statutes (1977). Appel-lees concede that a comprehensive plan, when adopted by the county, will necessarily encompass the Island. However, for purposes of this litigation, the land use planning provisions of Chapter 70-680 control.
The trial judge correctly determined that because the provisions of Chapter 70-680 require the adoption of a comprehensive land use plan, it became necessary to determine whether this provision had been complied with by the Authority; *MLXVIII otherwise, appellants argue, the 1976 lot lease and the modifications to the 1973 agreement would be invalid. We have examined the record, which includes the testimony of the several experts presented by both sides, and we find ample evidentiary support for the trial judge’s conclusion that the land use plan adopted by the Authority, and approved by the county commissioners on October 4, 1976 qualified as a “comprehensive land use plan” within the requirements of Chapter 70-680. We agree with appellees and the trial judge that the sufficiency of the plan is not required to be tested by the detailed requirements of Chapter 163, for the simple reason that a “land use plan” is simply one of the components of a “comprehensive plan” such as is contemplated by Chapter 163. See e. g. Section 163.190, Florida Statutes. The official acts of the authority, and of the county commission, come to this court with the presumption of validity, as do the acts of other governmental officials acting within their statutory authority. It is not the function of the courts to determine whether in exercising their discretionary powers the officials acted with wisdom, but simply to determine whether their actions fairly met the requirements of the law by which they are governed. In the absence of fraud or abuse of discretion clearly shown, their actions are not subject to “second guessing” by the courts. Hayes v. Bowman, 91 So.2d 795 (Fla.1957); Charlotte County v. Fiske, 350 So.2d 578 (Fla. 2nd DCA 1977).
Finally, appellants complain of certain provisions of the final judgment which appeared, according to appellants, to rule upon matters not properly before the court. Reference is made to paragraph 10 of the final judgment which provides in part as follows:
“10. The court takes note of the action of the Board of County Commissioners in May of 1977, wherein a motion was passed declaring revocation of the aforesaid plan, but holds that said action could not affect the validity of the aforesaid agreement, as modified November 15, 1976, or the lease executed October 20, 1976, both of which were executed after the comprehensive plan was adopted and approved and prior to the Commission’s vote to revoke the plan. Likewise, any future leases properly executed in accordance with the foregoing agreement, as modified, shall be valid and enforceable. . ” (Emphasis supplied)
Appellants complain that the language concerning validity of “future leases” dealt with a matter not framed by the pleadings or included in the requests for relief submitted by the parties. Appellees, on the other hand, point to the allegations of appellants’ second amended complaint, paragraph one, in which appellants requested a declaratory judgment as to the Authority’s power to execute similar leases. We conclude from a reading of the entire paragraph quoted above that the court’s ruling was intended simply as a determination of the validity of the modification to the 1973 agreement, made November 15, 1976, and the lease of October 20,1976, as against the contention that the county commissioner’s revocation of the plan (which occurred in May, 1977) would invalidate the same. It is clear, under the court’s ruling, that invalidity of the agreements and the lease would not result from the county’s revocation action; and, it necessarily follows that any future action taken by the Authority and F & K, pursuant to the agreements already entered into, could not be invalidated by reason of the county commission’s action in revoking the plan. However, to the extent that the broad language (the underlined sentence) used in the judgment might inferentially suggest a declaration of rights under the otherwise valid agreements, based upon future conditions and circumstances that have not yet occurred or been otherwise identified or described, we agree with appellants’ contentions that hold that the questioned language should be regarded as surplusage, and of no effect.
For the foregoing reasons the judgment appealed from is affirmed, and we find no error in the trial court’s taxation of costs against appellants.
ERVIN, Acting C. J., and BOOTH, J., concur.

. . . [A]nd provided further, that the authority shall be required to prepare and develop a comprehensive land use plan for the future development of Santa Rosa Island.” (Sec. 1, Ch. 70-680).

. Section 5. “After the effective date of this act and until a plan is adopted by the authority and approved by the board of county commissioners . . , neither the board of county commissioners nor the authority shall enter into any lease agreement with respect to any portion of the lands of Santa Rosa Island; provided, however, this prohibition shall not apply . to . . . lots or parcels subject to unexpired options to lease or to leases approved by the Authority prior to the effective date of this act but unexecuted as of the effective date of this act.”

.Substantially the same as formerly found in Section 20, Article III, Florida Constitution (1885).