CITY OF FERNANDINA v. STATE.

197 So. 454
En Banc
Opinion Filed July 26, 1940

804

*Herbert Wm. Fishler* and *L'Engle, Shands, McCarthy & Lane,* for Appellant;

*William A. Hallowes, III,* and *James H. Bunch,* for Appellee.

TERRELL, C. J.—In November, 1939, the City Commission of Fernandina approved an ordinance submitting to the freeholders of the city the proposition of whether or not it should issue bonds for the purpose of funding its floating indebtedness, such indebtedness being for money borrowed pursuant to provisions of the city charter and represented by short-term notes.

The election was held and the issuance of bonds in the sum of $50,000 was approved. The city filed its petition to validate to which the State attorney answered challenging the validity of the bonds on the ground first that the indebtedness was not incurred for a lawful municipal purpose; second, Chapter 19822, special Acts of 1939, under which the bonded indebtedness is proposed to be incurred, is unconstitutional and void; and third, Sections 3008 and 3009 C. G. L. of 1927, also relied on by the City as authority for the bonds, has no application to this case. On final hearing, the chancellor rejected the validation and dismissed the petition. The City appealed from that decree.

The chancellor found that all proceedings relating to calling and holding the election were regular and that the bonds were lawfully approved. He also found that $25,000 of the indebtedness proposed to be funded was borrowed to pay a debt incurred under a contract with O. H. Anderson whereby the city agreed to pay him certain sums for services rendered in bringing about the location of two pulp and paper mills in the city. It is shown that the contract with

Anderson was regular, that the services were fully performed and that the amount stated was paid him for them. No question as to reasonableness of the amount paid was ever raised.

The sole question here turns on that of whether or not the City was authorized to make such a contract.

Appellee contends that this question should be answered in the negative and relies on Sections 5 and 10, Article IX, of the Constitution of Florida to support his contention. Section 10 inhibits the Legislature from authorizing any city to become a stockholder in or from loaning its credit to any corporation or association. Section 5 inhibits counties and cities from imposing taxes for other than county or municipal purposes.

We find nothing in the contract or the facts of the case that violates Section 10 as the City in no sense becomes a stockholder in, nor does it loan its credit to or in any way appropriate money to the credit of the corporation which constructed the pulp mill. It is not shown that any inducement to the location of the pulp mills within the city other than natural advantages was offered, and certainly this could not be construed as loaning its credit to or taking stock in such an enterprise.

We next approach the question of whether or not the payment of a fee to Mr. Anderson for inducing the pulp mills to be located within the city was a municipal purpose of the use of the City's funds for such a purpose as contemplated by Section 5 of the Constitution. The question of what constitutes a municipal purpose is not static. It should be determined as of the time the Constitution is construed rather than as to what was so considered at the time of its adoption.

Section 7 of the city charter (Chapter 8949, Acts of 1921)

as amended by Chapter 18521, Acts of 1937, among other things authorizes the City of Fernandina to do all things necessary and proper for the safety, health, convenience and general welfare of its inhabitants. And to exercise all other powers of local self government. For these purposes the City is authorized to borrow not exceeding $75,000 in addition to any other sums it may be authorized to borrow. The sum being refunded was borrowed for these purposes.

This provision of the city charter is much like the general welfare clause of the Federal Constitution which has been expanded by interpretation so much in recent years. Chapter 19822, Acts of 1939, authorizes the city to issue bonds to fund any floating indebtedness incurred under its charter. The bonds in question were approved to fund the amount borrowed to settle the Anderson contract including a like amount that was borrowed for other purposes.

It therefore appears that the city commission, the Legislature and the people of Fernandina considered the expenditure of the funds in question as being for a municipal purpose. This Court has approved expenditures by the municipality for advertising purposes, golf courses, city office building, air base and in Smith v. Daffin, *et al.,* 115 Fla. 418, 155 So. 658; and again in Smith v. Jackson County, 129 Fla. 787, 176 So. 858, we approved a contract very similar in many aspects to the one brought in question. In view of this support for the instant contract, we would not be authorized to strike it down unless clearly shown to be outside the pale of the Constitution.

The fact of what constitutes a municipal purpose is a much broader one than it was when the Constitution was adopted, at which time police protection was the primary service extended by the municipality. The provision of the city charter quoted and relied on was designed to give the city commission some latitude in determining such purposes

and so long as the causes selected are shown to be in the reasonable purview of the Constitution they should be upheld.

It certainly cannot be disputed that attention to the economic welfare is one of the main concerns of the modern city. State, Federal, and local governments all recognize this and so long as such experiments are within reason and warranted by legislative fiat, it is not within the power of this Court to strike them down because it subscribes to a different economic theory or a different code of municipal morals. Even if in the making of such experiments the city picks up a "hot potato," it is not for this Court to undo it for reasons of policy.

In our view the experiment challenged was warranted by the city charter. Locating the two pulp mills within the city is shown to have given employment to more than one thousand laborers and in other respects contributed to the economic welfare of the city. There is no charge of fraud or waste or that the amount paid was not a reasonable compensation for the service rendered.

Other questions urged have been examined, but are found to be without merit. The judgment below is therefore reversed.

Reversed.

WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—As I see it, the two cases, Smith v. Daffin and Smith v. Jackson County, cited in the majority opinion, are not in point here. Those cases involved contracts between Smith and the County Commissioners of Jackson County by which Smith undertook to induce the State Road Department to comply with an alleged

agreement which it had made to finish a certain bridge on Road No. 1 across the Apalachicola River, in Jackson County, by building the approaches thereto, the cost of construction of which would have been borne by the county had Smith not successfully performed his undertaking, the result of which was a saving of over $100,000.00 to the county. So, this contract was with reference to an authorized county purpose. Here the contract of Mr. Anderson with the City of Fernandina was for services to be rendered by him in bringing about the location within the city of two pulp and paper manufacturing plants, which services were performed, and under the contract the City was to pay Mr. Anderson the sum of $25,000.00. While the beneficial results of this agreement are not disputed, the circuit judge reached the conclusion that said debt for $25,000.00 to Anderson "was not incurred for a valid public or municipal purpose or one authorized by law and that the petition to validate the bonds to refund that debt should not be granted. Since said unauthorized debt of $25,000.00 is in no way separated in these proceedings from the total amount of indebtedness proposed to be funded by said bonds, said petition should likewise be denied as to the whole proposed issue of bonds." The order of the court was in accordance with this conclusion.

I think the order entered by the learned circuit judge is correct and should be affirmed. The prime question is: Were the taxes proposed to be assessed and imposed for the payment of said bonds for a lawful municipal purpose?

The Constitution (Section 5 of Article IX) provides that "the Legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes * * *."

This plain provision of the Constitution is absolutely

"static" unless and until the people change it by amending it in the manner which the Constitution provides. Of course conditions change, and there must be new applications of old constitutional provisions to new and changing conditions, but the principles embodied therein must be preserved, in all their integrity by the courts.

It does not appear that the Legislature has expressly made this matter of encouraging or promoting the establishment of private enterprise within the city a municipal purpose, for which it may incur indebtedness and impose taxes for the payment of such indebtedness. . The weight of authority is to the effect that a contract by a municipal corporation to encourage or secure the establishment of manufacturing establishments within the city is not a municipal purpose. In this connection we might recall that Section 7 of Article IX of our Constitution reads: "No tax shall be levied for the benefit of any chartered company of the State, nor for paying interest on any bonds issued by such chartered companies, or by counties, or by corporations, for the above mentioned purpose.' See also Section 10 of Article IX.

Under the authorities it is very doubtful if the Legislature could, by authorizing statute, make it a municipal purpose. It might be noted in this connection that pulp and paper mills are not within themselves public institutions or public enterprises. They may, and I think are, greatly beneficial to the city and tend to reduce unemployment within the city, to increase the trade of merchants and to also ultimately increase the taxable assets within the city. But they are nevertheless private business enterprises as distinguished from public institutions or enterprises, and do not constitute a "municipal purpose." The first section of our Declaration of Rights guarantees to the people of this State the right of acquiring, possessing and protecting property, and the pursuit of happiness, and a city cannot be

permitted to encroach upon these basic property rights by taxation for any purpose other than one which has been reasonably declared by the Legislature to constitute a municipal purpose. I fear that the upholding of the validity of the proposed bond issue here involved will throw the door wide open to all the municipalities in the State to issue bonds and impose taxes for whatever purpose they consider will contribute to the business prosperity of the city. If it be held that the economic benefit resulting to the general public of the town by establishing manufacturing enterprises, authorizes taxation, the same may be said of almost any other lawful business or pursuit which employs capital or labor. Therefore, the merchant, the carpenter, the hotel owner, the banker and the building contractor might be equally deserving of the aid of the citizens of the municipality by compulsory contributions in the form of taxes.

In 44 S. J., at page 1116, it is said: "In the United States, a municipal corporation cannot incur indebtedness or grant money for the purpose of encouraging the establishment of a private manufacturing enterprise, nor can the Legislature authorize it to do so."

In this connection see Loan Association of Topeka, 20 Wal. (U. S.) 655, 22 L. Ed. 455; Sotherland v. Evart, 86 Fed. 579; Bradentown v. State, 88 Fla. 381, 102 So. 556; Loeb v. City of Jacksonville, 101 Fla. 429, 134 So. 205; Vol. 6, McQuillin on Municipal Corporations (2d) 343; Pardersburg v. Brown, 106 U. S. 487, 1 S. C. 442, 27 L. Ed. 238; Cole v. LaGrange, 113 U. S. 1, 5 S. C. 416, 28 L. Ed. 896.

In Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716, this Court said:

"The Legislature may within reasonable and lawful bounds determine what is a municipal purpose for which a municipal tax may be levied, or what powers it will give

a municipality, subject only to the express and implied provisions of organic law."

I am of the opinion that even the Legislature could not make the matter here involved a municipal purpose. I must therefore dissent from the conclusion reached by the majority in this case.