354 So.2d 1206 (1978)
STATE of Florida, etc., et al., Appellants,
v.
CITY OF SUNRISE, a Municipal Corporation of Florida, Appellee.
No. 51092.
Supreme Court of Florida.
January 26, 1978.
*1207 Robert L. Shevin, Atty. Gen. and James D. Whisenand, Deputy Atty. Gen., Tallahassee, Michael J. Satz, State Atty., Fort Lauderdale, and Counsel of Bryant, Franson, Miller, Olive, Brant & Ryan, Tallahassee, for appellants.
Arthur B. Parkhurst of Parkhurst, La Hurd & Purdy, Fort Lauderdale, and Brian T. Hayes, Tallahassee, for appellee.
Counsel of Gurney, Gurney & Handley, Orlando, and Edward S. Jaffry of Horne, Rhodes, Jaffry, Stephens, Bryant, Horne & Chapman, Tallahassee, for the Orlando Utilities Commission, amicus curiae.

ON REHEARING
HATCHETT, Justice.
This is a direct appeal from a final judgment entered in a bond validation proceeding. Jurisdiction vests pursuant to Article V, Section 3(b)(2), Florida Constitution. The question we must decide is whether or not a Florida municipal corporation is authorized by law to issue "double advance refunding" bonds? We answer this question in the affirmative.
Respondent, the City of Sunrise, is seeking the issuance of certain bonds which are to be used in part to refinance and refund money borrowed under bonds issued in 1973. The proceeds from the 1973 bonds were used to advance refund bonds issued in 1970. Both petitioner and respondent agree that "double advance refunding" presents a novel method of municipal financing within the State of Florida.
The growth of the City of Sunrise reflects the growth of the State of Florida during the past twenty years. In 1967 the City had a population of less than 3,200 people. By 1976 its population exceeded 32,000. The physical area of the City has increased 120 times. In order to accommodate such growth the City has had to establish, expand, and improve its water, gas and sewage systems. The development of these utilities has been facilitated by the issuance of municipal revenue bonds.
On November 9, 1976, the city council adopted an ordinance authorizing the issuance of water, gas and sewer refunding and improvement revenue bonds, Series 1976, in the principal amount of $80 million. They are to be issued in denominations of $5,000, maturing on October 1 of the years 1978 through 2016. A portion of the proceeds of these bonds will be used for the purpose of refunding the City's utility system revenue bonds, Series 1973, natural gas revenue bonds, Series 1973, utility system revenue bonds, Series 1976 and for making *1208 payments required under certain agreements entered into by the City for the purchase of various components for the systems. Eighteen percent of the $80 million will be devoted to the refunding of bonds previously issued, with 6 percent thereof for the refunding of bonds issued to refund earlier bonds. These bonds are payable only from revenue derived from the utility systems. The bonds do not involve the pledge of the City's full faith and credit nor do they impose any ad valorem tax on its residents. The 18 percent that will be used to refund earlier bond issues will be deposited in escrow with a bank for investment purposes. The earnings from the investment will be applied to the payment of bonds being refunded. These escrow funds, according to the City's expert witness, will be invested in obligations of the United States of America, peculiarly designed for this kind of financing scheme. It is the expert's opinion that the money derived from the escrow account will be sufficient to pay principal, interest, and redemption premiums on the bonds being refunded. All bonds will be paid from proceeds in the escrow account on the call date stated in the bonds.
Double advance refunding in this case has several advantages:
(1) bonds will be regarded in the market place as first lien bonds secured by the revenues of all three units of the utility system;
(2) the bonds will enable the city to take advantage of changed market conditions, thereby allowing their issuance at a lower rate than the rate of interest presently borne by the bonds being funded; and
(3) the proceeds from the new bonds will provide the funds necessary to acquire additional facilities for the combined system.[1]
It is our responsibility to determine whether the laws of Florida allow this novel financing arrangement. The relevant constitutional provision is Article VIII, Section 2, Florida Constitution, which provides:
(b) POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. Each municipal legislative body shall be elective.
Authority to issue bonds is extended to municipalities by Chapter 166.111, Florida Statutes, which provides:
The governing body of every municipality may borrow money, contract loans, and issue bonds as defined in 166.101, Florida Statutes, from time to time to finance the undertaking of any capital or other project for the purposes permitted by the state constitution and may pledge the funds, credit, property, and taxing power of the municipality for the payment of such debts and bonds.
The types of bonds which may be issued are defined as follows:
166.101 Definitions.  As used in this part, the following words and terms shall have the following meanings unless some other meaning is plainly indicated:
* * * * * *
(6) The term "refunding bonds" means bonds issued to refinance outstanding bonds of any type and the interest and redemption premium thereon. Refunding bonds shall be issuable and payable in the same manner as the refinanced bonds, except that no approval by the electorate shall be required unless required by the state constitution.
* * * * * *
(8) The term "project" means a governmental undertaking approved by the governing body and includes all property rights, easements, and franchises relating thereto and deemed necessary or convenient for the construction, acquisition or *1209 operation thereof, and embraces any capital expenditure which the governing body of the municipality shall deem to be made for a public purpose including the refunding of any bonded indebtedness which may be outstanding on any existing project which is to be improved by means of a new project. (Emphasis added.)
The constitutional and statutory scheme makes several matters clear. Municipalities may issue bonds to finance any capital or other project permitted by the state Constitution. A project may include the refunding of any outstanding indebtedness. Bonds which may be issued include "refunding bonds." Refunding bonds are those issued to "refinance outstanding bonds of any type and the interest and redemption premium thereon." There is no limitation on the type of bonds refunded or the purposes for which the bonds are to be refunded. State v. City of Melbourne, 93 So.2d 371 (Fla. 1957). Simple "advance refunding" is now an acceptable method of financing municipal projects. We have so held in State v. City of Melbourne, supra; State v. City of Orlando, 82 So.2d 874 (Fla. 1955); and State v. City of Miami, 155 Fla. 6, 19 So.2d 410 (1944).
In our original opinion in this case, we held that in order to be validated, the proposed bonds must meet the "lower net average interest cost" requirement found in Article VII, Section 12(b), Florida Constitution.[2] Section 166.111, Florida Statutes, authorizes municipalities to borrow money, but only for "purposes permitted by the state constitution." Since Article VII, Section 12(b) is the only place in the Constitution where refunding bonds are specifically authorized, we concluded that such bonds must be issued in accordance with the requirements of that section, or not at all.[3] On rehearing, we determine that the provisions of Article VII, Section 12(b) apply only to "bonds ... payable from ad valorem taxation ..." and are not applicable to the issuance of revenue bonds.
Since there is no specific section in the Constitution authorizing municipalities to issue refunding revenue bonds, the Attorney General[4] and all other parties have argued on rehearing that the municipalities may issue such bonds under their constitutional home-rule powers. Article VIII, Section 2, Florida Constitution, expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services. The only limitation on that power is that it must be exercised for a valid "municipal purpose." It would follow that municipalities are not dependent upon the Legislature for further authorization. Legislative statutes are relevant only to determine limitations of authority. Since there is no constitutional or statutory limitation on the right of municipalities to issue refunding revenue bonds not payable by ad valorem taxes, we hold that municipalities may issue "double advance refunding bonds" so long as such bonds are pursuant to the exercise of a valid municipal purpose.
In reaching this determination we recognize that our present authority to review such bonds is sharply limited, almost to the *1210 point of insignificance.[5] Our decision cannot reach the question of whether the revenue bond plan presently before us is fiscally sound, or whether double advance refunding is a wise method of financing municipal undertakings. As was held in State v. Manatee County Port Authority, 171 So.2d 169 (Fla. 1965) at 171:
It is further suggested that the record fails to support a conclusion that the proposed project is fiscally sound. We have held that the fiscal feasibility of a revenue project is an administrative decision to be concluded by the business judgment of the issuing agency. Such problems as the advisability of the project and its income potential, must be resolved at the executive or administrative level. They are beyond the scope of judicial review in a validation proceeding. Town of Medley v. State, Fla., 162 So.2d 257. We, therefore, disclaim any judicial responsibility for the fiscal integrity of the proposed project. As we stated in Medley, a decision on this aspect of revenue financing is one to be made by the people involved, acting through their proper executive or administrative officials. The function of a validation proceeding is merely to settle the basic validity of the securities and the power of the issuing agency to act in the premises.
See also Webster v. North Orange Memorial Hospital Tax District, 187 So.2d 37 (Fla. 1966).
For the reasons expressed herein, we withdraw our previous opinion and affirm the trial court's order validating these bonds.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND and SUNDBERG, JJ., concur.
KARL, J., dissents with an opinion.
KARL, Justice, dissenting.
I cannot join with the majority in the decision to validate the "double advance refunding" bonds. I find no authority in the Constitution or statutes for such a scheme of financing, and I am unwilling to assent to the proposition that the constitutional grant of home rule power is broad enough to authorize it. Quite to the contrary, I conclude that the constitutional and statutory provisions relating to municipal borrowing place limits on the general grant of power and preclude the financing plan proposed in this case.
The validating judgment before us holds that the issuance of the bonds is for a proper, legal and corporate purpose and that they are fully authorized by law. By placing our imprimatur on that judgment, the Court today establishes judicial precedent that will open the door to other, and perhaps even more sophisticated, financing plans. We should not do that.
Our own precedent tells us that we are not to interfere with the issuing agency's business judgment as to the fiscal soundness or advisability of bond issues, but we are not precluded from examining this new proposal, in the light of the intent of the Legislature and the framers of the Constitution, to determine whether the issue is fully authorized by law. My conclusion is that neither intended to authorize double advance refunding bonds. I would, therefore, reverse.
NOTES
[1] Another advantage of this financial plan in this case is the fact that the $500,000 Utility System Revenue Bonds, Series 1976, are subordinate to the Utility System Revenue Bonds, Series 1973, and the city by resolution covenanted to perform all acts necessary to assure the accession to parity status of such bonds within a certain time period.
[2] Art. VII, section 12 of the Constitution of Florida: Section 12. Local bonds.  Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates payable from ad valorem taxation and maturing more than twelve months after issuance only:

(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
(b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.
[3] A reading of the trial judge's order indicates that the City of Sunrise relied upon Article VII, Section 12(b), Florida Constitution as its authority to issue double advance refund bonds. At the initial hearing before this court both parties argued the legal significance of this Article of the Constitution.
[4] The Attorney General was granted permission to appear and argue the issues, and other parties allowed to file briefs on rehearing due to the importance of the issue.
[5] The matters which must be alleged and proved are set forth in Sec. 75.04, Fla. Stat. (1975) which provides:

Complaint.  The complaint shall set out the plaintiff's authority for incurring the bonded debt or issuing certificates of debt, the holding of an election and the result when an election is required, the ordinance, resolution, or other proceeding authorizing the issue and its adoption, all other essential proceedings had or taken in connection therewith, the amount of the bonds or certificates to be issued and the interest they are to bear; and, in case of a drainage, conservation or reclamation district, the authority for the creation of such district, for the issuance of bonds, for the levy and assessment of taxes and all other pertinent matters.