Spencer B. Gilbert City Attorney Port St. Lucie
QUESTIONS:
1. Is it within the powers of a municipality to provide postal services for the convenience of local citizens?
2. Is it a proper municipal purpose to use public funds and property to establish, maintain, and operate a postal contract station in the city hall?
3. Is there any liability on the city or its officials for the use of public funds and property in the manner described?
SUMMARY:
It is a valid municipal purpose for the City of Port St. Lucie to operate a contract post office in the city hall to provide convenient postal service for the citizens of Port St. Lucie and is well within the corporate and proprietary powers of a municipality; there is no constitutional or statutory limitation on the municipal home rule power to provide such service. It is a proper municipal purpose to use public funds and property to establish, maintain, and operate a postal contract station in the city hall, as a valid municipal purpose is not destroyed by the existence of a federal benefit received or a federal purpose simultaneously served in the same project or activity. It may be generally stated that no personal liability attaches to the members of the city council with regard to the lawful and proper use of city funds for public purposes.
You have stated that for the past several years the City of Port St. Lucie has maintained a branch United States Post Office, classified as a `contract station,' within a portion of the total space rented by the city for use as a city hall. In spite of numerous requests from the city, the Postmaster General has chosen not to locate or establish a main post office in Port St. Lucie, so that the nearest post office is 7-10 miles away in Ft. Pierce. In order to provide more convenient postal service for the citizens of Port St. Lucie, the city council determined to provide this service through a postal contract station located at the city hall and entered a contract with the Postal Service for this purpose. Under this agreement, the Postal Service pays the city $1,000 annually, and the city provides the floor space, all of the utilities to that space, and a city employee, 80 percent of whose time is devoted to the post office, at a salary of approximately $7,250, including fringe benefits.
You are concerned that providing postal services in the manner described may not come within the powers of a municipality or within the public purposes for which municipal funds and property can be used. It has also come to my attention that similar contract stations are in existence on several campuses of the State University System, established by contracts between the particular university and the Postal Service, located on property of the universities, and operated by university (state) employees. Thus, while your request presents a novel question, the situation you have described is by no means unique.
At the outset, it should be noted that postal service is an exclusively federal function delegated by the states to the Congress in s. 8 Art. I, U.S. Const. Under the authority to establish post offices, postal contract stations and branches have been an integral part of the national postal system, first on a statutory basis and currently under the rules and regulations promulgated by the Postmaster General following the adoption of the Postal Reorganization Act of 1970, Pub.L. No. 91-375. 39 C.F.R. s. 241.2(b)(2) (1979) gives the following definition of a `contract' branch or station:
 Operated under contract by persons who are not Federal Government employees. Persons operating contract stations and branches are independent contractors and neither the contractors nor any person employed by them to assist in the conduct of contract stations or branches shall be employees of the Federal Government for any purpose whatsoever. (Emphasis supplied.)
For purposes of this opinion, I assume that a municipal corporation in this state is eligible and qualifies under applicable federal laws and regulations to contract with the federal agencies and authorities for the establishment, maintenance, and operation of a `contract station' and that your city has complied with all such laws and regulations. Therefore, this opinion will be limited to a consideration of the propriety of this activity by a municipality as a corporate and proprietary power and function of the city and the expenditure of public funds therefor under Florida constitutional and statutory law.
Section 2(b), Art. VIII, State Const., provides for the powers of municipalities in the following terms:
 Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. (Emphasis supplied.)
The Legislature recognized the constitutional basis for the exercise of municipal powers in s. 166.021(1), F. S., a part of the Municipal Home Rule Powers Act, which states:
 As provided in s. 2(b), Art. VIII of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law. (Emphasis supplied.)
 The Florida Supreme Court has ruled that this act must be construed as a broad grant of power to municipalities, City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974), that the only limitation on that power is that it be exercised for a `municipal purpose,' State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978), and that specific legislation is not necessary for further authorization but is relevant only to determine limitations of authority. City of Sunrise, supra, and Forte Towers, supra. In those cases the court was presented with municipal activities which were the subjects of general legislation but which were not expressly prohibited to be performed by a municipality (rent control in Forte Towers) or in the manner attempted (issuance of double advanced refunding bonds in City of Sunrise). In both instances the court found that the municipal power existed because the action in question was for a `valid municipal purpose' and was not expressly prohibited. Cf. AGO's 077-113, 077-71, and 073-267.
 The question of what constitutes a `valid municipal purpose' has varied over the years. `The answer to what is a municipal purpose is not static. Each generation may determine its concept of these things.' State v. City of Tallahassee, 195 So. 402, 403 (Fla. 1940); City of Fernandina v. State, 197 So. 454 (Fla. 1940). Our courts have found a legitimate municipal purpose in the following activities: building a planetarium, Burton v. Dade County, 166 So.2d 445 (Fla. 1964); establishing a horticultural library, Raney v. City of Lakeland, 88 So.2d 148 (Fla. 1956); providing free water to a state university to induce its location in the city, City of Gainesville v. Board of Control, 81 So.2d 514 (Fla. 1955); contracting with a private person to persuade a particular industry to locate in the city, City of Fernandina, supra; and many others.
 The older cases on the subject of municipal powers often distinguished between `governmental' (delegated from the state) powers, which were strictly viewed, and `corporate' or `proprietary' (essential or inherent) powers, which were construed more liberally. In Hamler v. City of Jacksonville, 122 So. 220 (Fla. 1929), the court, quoting with approval from a treatise on public utilities and from 4 McQuillin Municipal Corporations, p. 3840, described the `proprietary' power as `attending to matters of local interest merely for the special benefit and advantage of the city and its citizens' and conducting services `in the manner which promises the greatest benefit to the city and its inhabitants in the judgment of the city council; and it is not within the province of the Court to interfere with the reasonable discretion of the council in such matters.' 122 So. at 221. Accord: City of Gainesville, supra.
 In my opinion, and unless and until judicially determined otherwise, providing postal services for the benefit, convenience, and welfare of local citizens is well within the parameters of a valid `municipal purpose' and the `corporate and proprietary' powers of a municipality (s. 2(b), Art. VIII, State Const.) as seen from the aforecited cases. I am unaware of any constitutional or statutory provision on the subject of postal services which expressly prohibits such an activity in the manner you describe by a Florida municipality. Your request presents a case of first impression, and my research has disclosed no case in Florida (or any other jurisdiction) specifically approving or disapproving the use of municipal public funds and property to provide postal services for the benefit, convenience, and welfare of the citizens of a municipality.
 In addition, I am aware of no provision in the city charter of Port St. Lucie which would limit the authority of the city council to provide this service or to enter this contract. On the contrary, you have informed me that your charter provides that the city council may appropriate and expend money for any public purpose and may exercise any of its powers or perform any of its functions jointly, by contract, with any of the other states and their agencies or the United States and its agencies.
 Thus, I can see no constitutional or statutory limitation on the municipal home rule power to provide postal services in the manner you have described for the convenience and welfare of local citizens. It remains to be considered whether municipal funds and property in the form of salary, fringe benefits, rented space, and utility services can be spent or used for the particular activity.
AS TO QUESTION 2:
 Section 10, Art. VII, State Const., prohibits a municipality (and other governmental entities) from becoming a joint owner with or giving, lending, or using its taxing power or credit to aid any corporation, association, partnership, or person. This provision in the 1968 Revised Constitution and its precursors, ss. 7 and 10, Art. IX, State Const. 1885, have been construed and applied numerous times over the years. The essence of the prohibition is that public funds or property can be used only for a public purpose and not for a private purpose. This `public purpose doctrine' has come to mean that there `must be some clearly identified and concrete public purpose as the primary objective' and `[t]here must be some control retained by the public authority.' O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). Accord: Burton, supra.
 Use of public funds and property in the manner you described easily satisfies the O'Neill test. The postal facility is open to the public and serves a public purpose not only primarily but exclusively. No one benefits privately from this operation other than the individual citizens who use the facility. Such a benefit will not destroy the public purpose. State v. Board of Control, 66 So.2d 209 (Fla. 1953). Furthermore, control of the funds and property remains in the public entity at all times.
 In your letter, you referred to the use of city funds and property to provide postal services as a `subsidy' of the Postal Service, implying, perhaps, that such a use was therefore outside the scope of municipal purposes or powers. However, you emphasized — and I am persuaded — that the reason for providing the service was for the special benefit, welfare, and convenience of the citizens of the municipality, not for aid to the Postal Service. I believe it would be more accurate to describe the financial effect on the Postal Service as an `incidental benefit' flowing from the use of these funds and property primarily, if not exclusively, for the benefit of the local citizens. As such, it is neither primarily private nor primarily federal, but legitimately public or municipal. See O'Neill, supra; see also AGO's 072-68, 072-129, and 072-167, in which leases of county and city buildings to private physicians and veterinarians were determined to have primarily a private benefit and therefore to be improper uses of public property; but see AGO's 072-198 and 077-27 in which city payments to private, nonprofit organizations were found to have primarily a public purpose.
 Moreover, even if the request to establish a postal contract station had come from the United States Postmaster General rather than the local citizens or if it were viewed as `aid' to the Postal Service, this would still not destroy the municipal purpose or violate the constitutional provision restricting use of municipal taxing power and credit. Aid to a federal agency is not prohibited by s. 10, Art. VII of the State Constitution. Federal agencies are not within the meaning of `corporation, association, partnership or person' in that constitutional provision, AGO 072-382, and the Postal Service is such an agency. The Postal Service remains an agency of the federal government, notwithstanding the Postal Reorganization Act placing greater emphasis on making postal services profitable and businesslike. In 2 U.S. Code and Admin. News at 3654 (1970), the legislative history of H.R. 17070 (which became Pub.L. No. 91-375) presents the following `Summary of Committee Action':
 Title I of [H.R. 17070] provides for the total reform and complete modernization of the Post Office Department. It takes the Post Office Department completely out of the President's Cabinet and out of politics and recasts it in the form of an independent establishment within the executive branch of the Government, to be known as the United States Postal Service.
 [The bill] does not provide for a Government corporation, but it does provide for matching responsibility with authority to conduct the affairs of the Postal Establishment on a businesslike basis, while retaining the public service character of the Nation's mail system. (Emphasis supplied.)
The state, its agencies, and political subdivisions are similarly excluded from this category, State v. Town of North Miami,59 So.2d 779, 783 (Fla. 1952), and AGO's 058-9 and 077-113, as are nonprofit educational institutions, Overman v. State Board of Control, 62 So.2d 696 (Fla. 1952).
Furthermore, a valid municipal purpose is not destroyed by the existence of a federal benefit received or a federal purpose simultaneously served in the same project or activity. Overlapping governmental purposes have frequently been recognized and approved by the Florida courts. In State v. Gordon, 189 So. 437, 439 (Fla. 1939), the Supreme Court declared that `the cases are too numerous to relate in which States, Counties and Municipalities by legal fiat have aided in the development of projects that were essentially federal but in which the local entity had an abiding interest.' At 189 So. 440 the court stated that `a governmental project may respond to municipal, county, state, or federal purpose or all may coalesce in the same project but that fact does not inhibit the County, State, or the Federal Government, any one, or all of them from contributing to it.' Accord: Posey v. Wakulla County, 3 So.2d 799 (Fla. 1941), upholding the constitutionality of using county funds by contract with the Federal Works Progress Administration. Cf. City of Tallahassee, supra, in which the court found that a `municipal purpose' was served by the issuance of city building revenue certificates for the construction of a building which would be leased to federal, state, and county governments. The fact that another unit of government — rather than a private entity — may also be benefited by the expenditure of certain public funds does not invalidate the public purpose of a particular expenditure. Penn v. Pensacola-Escambia Government Ctr. Auth., 311 So.2d 97 (Fla. 1975), affirming the decision that a municipal lease indirectly benefiting a school board was not in violation of Art. IX, State Const., or any other constitutional provision.
AS TO QUESTION 3:
In view of my answer to your second question, the third question does not require any response. However, it may be generally stated that no personal liability attaches to the members of the city council with regard to the lawful and proper use of city funds for public purposes.
In summary, therefore, unless and until judicially determined otherwise, I conclude that providing postal services through a contract station in the city hall for the benefit, convenience, and welfare of local citizens is within the home rule powers of a municipality and that using public funds and property therefor serves a valid municipal purpose.
Prepared by:
Carol Z. Bellamy Assistant Attorney General