Mr. Carl V.M. Coffin City Attorney City of West Palm Beach Post Office Box 3366 West Palm Beach, Florida 33402
Dear Mr. Coffin:
As West Palm Beach City Attorney, you have asked the following question:
1. Do riparian rights include the right to build a dock into navigable waters such as the Florida Intracoastal Waterway? 2. Do the upland owners who have executed certain agreements possess riparian rights necessary to build a dock? 3. If riparian rights include the right to build a dock in navigable waters, does a Florida municipality have the right to regulate dock location and construction? 4. Does the construction by the city of a seawall along the shoreline of navigable waters affect the right of a riparian to construct a dock into such waters? 5. Is it a lawful expenditure of public funds for the city to construct a seawall on private property?
In sum:
1. In Florida, a riparian property owner possessed a qualified common law right to build a dock or wharf out to navigable waters in the absence of a statute. 2. This matter requires resolution of mixed questions of law and fact which is the province of the courts. 3. The City of West Palm Beach is authorized by Ch. 166, F.S., and s. 2(b), Art. VIII, State Const., to enact regulations relating to dock location and construction. However, any such regulation which results in a limitation of or complete prohibition of the exercise of the riparian right to "wharf out" to navigable waters may subject the city to liability for just compensation for the taking of such a right. 4. I cannot conclude that the building of a seawall by the City of West Palm Beach to facilitate the construction and maintenance of a public thoroughfare would defeat the riparian rights of an upland owner who has specifically reserved such rights in lands encumbered by a dedicated easement for such thoroughfare. 5. The City of West Palm Beach may lawfully expend municipal funds to construct a seawall on private property if the city commission determines that such a project satisfies a public purpose.
Your letter states that the municipal boundary of the City of West Palm Beach includes a portion of the Intracoastal Waterway to its navigable channel. Many private residential properties in the city abut these waters as riparian uplands. The owners of some of these riparian lands desire to construct docks into the Intracoastal Waterway. In many areas Flagler Drive separates the residence from the water. The Intracoastal Waterway has been bulkheaded by the city in these areas.
The city has entered into agreements with each affected upland owner to gain the right to build Flagler Drive along the Intracoastal Waterway and to bulkhead the newly filled land at the water. The owners retained all riparian rights in exchange for the city's right to construct and maintain the road and seawall.
The city has enacted a zoning ordinance which requires a permit to build a dock. The ordinance prohibits the commercial use of residential docks and limits dock construction in terms of length, width, and location in relation to the upland and neighboring properties.
Initially, I would note that I am aware of no authority which requires that the Florida Intracoastal Waterway[1] be treated differently than other navigable waters in Florida with regard to the questions you have presented.[2]
Question One
It is the general rule that the owner of riparian property is entitled to construct and maintain a wharf, dock, or pier from his or her land to the navigable portion of adjoining waters.[3]
However, this entitlement is subject to the paramount rights of the public and the private rights of other littoral or riparian landowners.[4]
The Supreme Court of Florida has, in a number of cases, delineated this entitlement as a common law right incident to ownership of riparian property. This line of cases provides generally that title to submerged tidal lands remains in the state for the benefit of the public; that riparian property owners have a right of access, as well as a right of use of the waters over such submerged lands which is shared in common with the public; and riparian owners have a qualified right, with the consent of the state, to erect wharves or piers or docks subject to lawful state regulation and the dominant powers of Congress.[5]
In Freed v. Miami Beach Pier Corporation,[6] the Court stated that:
Riparian or littoral owners to ordinary high-water mark on the ocean or gulf or other navigable waters have, by the common law, a qualified right with the consent or acquiescence of the state to erect wharves or piers or docks in front of the riparian holdings to facilitate access to and the use of the navigable waters, subject to lawful state regulation and to the dominant powers of Congress. If such wharves or piers or docks are erected without due authority, they may be removed as purprestures, or, if they are or become nuisances or are harmful to the rights of the public, they may be removed or abated by due course of law.[7]
More recently, the Second District Court of Appeal, in Board of Trustees of the Internal Improvement Trust Fund v. Medeira Beach Nominee, Inc.,[8] recognized that "[r]iparians appear to have a qualified common law right to wharf out to navigable waters in the absence of a statute."[9]
Thus, riparian property owners in Florida have a qualified right to build docks or "wharf out" to navigable water in the absence of a statute.
Question Two
Providing an answer to your second question depends on resolution of mixed questions of law and fact which is the particular province of the judiciary. This office cannot advise you on the legal effect of particular contractual provisions which bind the City of West Palm Beach and the property owners involved.[10]
However, in an effort to provide you with some guidance, I would make the following general comments.
A dedication of lands for public street purposes, in the absence of a clear intent to the contrary, does not divest the owner of title, but only subjects the land and the title to an easement. When and if the easement is lawfully terminated, the title to the land remains in the dedicator or his successors in interest, free and clear of the easement.[11]
With regard to dedicated public streets which have a navigable water boundary, the riparian rights attaching to the streets generally accrue to the public and are not impliedly reserved to the owner of the fee. However, the Supreme Court of Florida has enunciated the principle that "riparian rights do not pass as an incident to the street easement where there is an express reservation by the dedicator of such riparian rights . . . ."[12]
Thus, an express reservation of riparian rights by the dedicator of the easement for a public thoroughfare will result in the owner retaining such rights.
According to your letter the owners of the property subject to an easement for Flagler Drive have expressly retained all riparian rights in exchange for the city's right to construct and maintain the road and seawall.
Question Three
Your third question deals with the authority of a municipality to regulate the riparian rights of upland property owners, in this case the right to "wharf out" to navigable waters.
Section 2(b), Art. VIII, State Const., provides that:
Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. . . .
The Supreme Court of Florida has stated that this constitutional provision "expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services."[13] The only limitation on the power of municipalities under this constitutional section is that such power must be exercised for a valid municipal purpose.[14] Thus, the Court has determined that statutes are only relevant to determine the limitations on municipal authority and cities need no further authorization from the Legislature to conduct municipal government.[15] Pursuant to s. 166.021(1), F.S., municipalities are granted "the govern-mental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law."
Generally, a municipality has civil and criminal jurisdiction over property within its corporate boundaries and may regulate and restrict certain activities reasonably calculated to protect the public health, safety, and welfare.[16] The power of municipalities to regulate in this area is, however, subject to the state's paramount power to regulate and control the use of its sovereign lands. To the extent that any such regulation is preempted by the state or is inconsistent with general law or with regulations adopted by the state, any municipal regulation would be invalid.[17] I am aware of no state legislation which would preempt municipal regulation in this area.[18]
An additional limitation on a municipality's power to regulate in this area and as a corollary to the requirement that such regulation and restrictions further the public health, safety, and welfare, is the requirement that such regulation not be violative of the constitutional protections afforded to the public for the use of and access to state sovereignty lands.[19]
As discussed above, the Supreme Court of Florida has long recognized that a riparian proprietor who owns to the ordinary high-water mark of navigable waters, has common law rights in the adjacent waters, such as access to the waters, with the rights of bathing and fishing in and navigation over such waters, in common with the general public, subject to lawful regulation by the sovereign state in the interest of the public, and subject to the authority of Congress as to commerce and navigation.[20]
As the Court stated in Broward v. Mabry:
Those who own land extending to ordinary high-water mark of navigable waters are riparian holders who, by implication of law, and in addition to the rights of navigation, commerce, fishing, boating, etc., common to the public, have in general certain special rights in the use of waters opposite their holdings; among them being the right of access from the water to the riparian land and perhaps other easements allowed by law. These special rights are easements incident to the riparian holdings, and are property rights that may be regulated by law, but may not be taken without just compensation and due process of law.[21] (e.s.)
The Court has determined that the rights of riparian landowners may not arbitrarily be abrogated or restricted by the state or local government without a real relation to legitimate govern-mental purposes.[22] Any such restriction or other regulation, unless necessary to protect the public health, welfare, safety or morals, would be injurious to the riparian rights of the upland owner and would be invalid.
Section 6(a), Art. X, State Const., provides that private property shall not be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the court registry and available to the owner.
It is a settled principle of law in this state that riparian rights are property rights that may not be taken without just compensation.[23] Thus, this office in AGO 85-47 concluded that the City of Clearwater was empowered by Ch. 166, F.S., and s. 2(b), Art. VIII, State Const., to enact an ordinance repealing an exemption for littoral proprietors from municipal legislation prohibiting boat traffic within 300 feet of designated public beaches to protect the public health, safety, and welfare. However, as that opinion cautioned, riparian and littoral rights are property rights that may not be taken without just compensation, and a limitation, or complete prohibition of the exercise of such rights as ingress and egress to and from the owner's land over the water may subject the municipality to liability for just compensation for the taking of such rights.
Similarly, it is my opinion that the City of West Palm Beach is authorized to enact regulations dealing with dock location and construction, but should be cautioned that a limitation, or complete prohibition of the exercise of this common law riparian right may subject the city to liability for just compensation for taking such rights.
Question Four
As I have concluded in Question One, "wharfing out" is a riparian right incident to ownership of the upland property to which such rights attach. Further, a dedicator of property for a public thoroughfare may reserve all riparian rights appurtenant to the land encumbered by the easement dedicated. You have stated that agreements for construction of Flagler Drive entered into between the City of West Palm Beach and the riparian owners have reserved all riparian rights to the property owners. I am aware of no Florida case directly on this point. However, I cannot say that construction of a seawall to facilitate the construction and maintenance of Flagler Drive would defeat these riparian property holders' common law right to build docks and wharfs from their property out to navigable waters since the owners of such property specifically reserved to themselves all riparian rights incident thereto.[24]
Question Five
Finally, you have asked whether it is lawful for the City of West Palm Beach to expend city funds to construct a seawall on private property. I would note that this office must presume that any such action which has been taken in the past by the city is law-ful and valid until and unless a court determines otherwise.[25]
The answer to this specific question is, however, dependent on the primary purpose for such an expenditure. It is axiomatic that municipal funds may be used only for a municipal purpose, and only when properly budgeted for such purpose.[26]
Section 10, Art. VII, State Const., prohibits the state or counties, municipalities, or any agency thereof, from using, giving, or lending its taxing power or credit to aid any private interest or individual. The purpose of the constitutional provision is to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would at most only be incidentally benefitted.[27] However, if the paramount purpose of a public expenditure is a public purpose, the fact that the expenditure may also incidentally benefit private individuals does not violate s. 10, Art. VII, State Const.
The determination of what constitutes a valid public purpose for the expenditure of public funds is a factual determination for the legislative and governing body involved, in this case the City Commission of the City of West Palm Beach.[28] Such a determination must be made by the city commission and cannot be delegated to this office.[29]
Thus, if the City of West Palm Beach determines that the construction of a seawall on private property serves a public purpose, even if private individuals are incidentally benefitted, then the expenditure of municipal funds to achieve such a purpose would not violate s. 10, Art. VII, State Const.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] The "Florida Intracoastal Waterway" is defined in terms of its geographical limits in s. 327.02(8), F.S.
[2] Compare, s. 327.60(1), F.S., which relates to local regulation of the operation, equipment and other matters relating to vessels operating upon the waterways. The statute specifically states that nothing in the prescribed sections shall be construed to prevent the adoption of local regulations relating to operation and equipment of vessels, "except that no such ordinance or local law may apply to the Florida Intracoastal Waterway . . . ."
[3] Section 253.141(1), F.S., defines riparian rights for purposes of Florida law as:
[T]hose incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing, and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him. They are appurtenant to and are inseparable from the riparian land. The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.
[4] See, 65 C.J.S. Navigable Waters s. 73.
[5] See, Ferry Pass Inspectors' Shippers' Ass'n v. White's River Inspectors' Shippers' Ass'n, 48 So. 643 (Fla. 1909), Thiesen v. Gulf, F. A. Ry. Co., 78 So. 491 (Fla. 1918), and Freed v. Miami Beach Pier Corporation, 112 So. 841 (Fla. 1927).
[6] 112 So. 841 (Fla. 1927).
[7] Id. at 844-845. And see, Williams v. Guthrie, 137 So. 682, 685
(Fla. 1931) ("[I]n this state riparian owners have the riparian right to construct wharves from the upland to reach the navigable water, when not objected to by the sovereign or specially forbidden by statute.")
[8] 272 So.2d 209 (2 D.C.A. Fla., 1973).
[9] Id. at 214. Cf., s. 161.201, F.S., which preserves all common law riparian rights "including but not limited to rights of ingress, egress, view, boating, bathing, and fishing."
[10] See, Department of Legal Affairs Statement of Policy Concerning Attorney General Opinions.
[11] Burkart v. City of Fort Lauderdale, 156 So.2d 752, 757 (2 D.C.A. Fla., 1963), quashed, 168 So.2d 65 (Fla. 1964).
[12] Burkart v. City of Fort Lauderdale, 168 So.2d 65, 68 (Fla. 1964). See, Feig v. Graves, 100 So.2d 192, 195 (2 D.C.A. Fla., 1958) ("A dedicator may reserve all riparian rights appurtenant to the land encumbered by the easement dedicated.")
[13] State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978).
[14] Id.
[15] Id. at 1209.
[16] See, 64 C.J.S. Municipal Corporations s. 1816; Carter v. Town of Palm Beach, 237 So.2d 130 (Fla. 1970); AGO's 85-47, 79-71, 77-139, and 60-139.
[17] See, s. 166.021, F.S.; City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974); AGO's 78-141, 75-167 and 73-463.
[18] However, there are state statutes and administrative rules which regulate aspects of dock or wharf construction. See, e.g., s. 403.813, F.S., relating to permits for construction of certain types of docking facilities; s. 253.77, F.S., requiring that consent be secured from the Board of Trustees of the Internal Improvement Trust Fund of the Department of Natural Resources prior to any construction activity involving state sovereignty lands; Rule 18-14.003(4), F.A.C., making it a violation of this rule to build a dock on or over state lands without consent or authority from the Board of Trustees of the Internal Improvement Fund or Department of Natural Resources; and Rule18-20.004(1)(e)5., F.A.C., relating to the management policies, standards and criteria for activities on sovereignty lands and authorizing a lease, easement, or consent of use for private docks of riparian owners. And see, s. 161.041, F.S., setting out requirements for coastal construction permits. Municipalities may not adopt ordinances in conflict with such state regulations.
[19] See, s. 11, Art. X, State Const. (title to land under navigable waters within boundaries of state which have not been alienated are held by the state by virtue of its sovereignty in trust for all the people); AGO 79-71 (foreshore area of beaches between mean high and low-water marks and area seaward of beach erosion control line, the traditional uses for which are fishing, swimming, boating, and other public purposes authorized by law, are held in trust for the public).
[20] White v. Hughes, 190 So. 446, 448 (Fla. 1939). And see, Thiesen v. Gulf, F. A. Ry. Co., 78 So. 491 (Fla. 1918); Brickell v. Trammell, 82 So. 221 (Fla. 1919); and Freed v. Miami Beach Pier Corporation, 112 So. 841 (Fla. 1927).
[21] 50 So. 826, 830 (Fla. 1909). See also, Board of Trustees of the Internal Improvement Trust Fund v. Medeira Beach Nominee, Inc., 272 So.2d 209, 214 (2 D.C.A. Fla., 1973).
[22] See, Webb v. Giddens, 82 So.2d 743, 745 (Fla. 1955) (one common law riparian right is ingress and egress to and from the owner's land over the water and that the denial of such access deprived the owner of "a practical incident of his riparian proprietorship."); and Game and Fresh Water Fish Commission v. Lake Islands, Ltd., 407 So.2d 189, 193 (Fla. 1981) (citing the Webb case for the proposition that: for travel over a navigable body of water to be materially obstructed by the state there must be an overriding public interest that justifies depriving either the public or the riparian of the enjoyment of this right, and; whether such an obstruction is called a public nuisance from which the riparian owner sustains special injury, or whether it is called a private nuisance as to him, the riparian owner has the individual right to object and to have the courts hear his objection).
[23] See, Thiesen v. Gulf, F. A. Ry. Co., 78 So. 491, 507 (Fla. 1918); AGO 85-47.
[24] See, Burkart v. City of Fort Lauderdale, 168 So.2d 65, 70
(Fla. 1964) (because of an express reservation of riparian rights by the dedicator to itself and assigns, contained in the plat, such rights did not pass to the public as an incident to the street easement); Feig v. Graves, 100 So.2d 192, 195 (2 D.C.A. Fla., 1958) (a dedicator may reserve all riparian rights appurtenant to the land encumbered by the easement dedicated).
[25] See, Department of Legal Affairs Statement of Policy Concerning Attorney General Opinions.
[26] See, AGO's 83-6 and 72-198; s. 10, Art. VII, State Const. 
[27] See, Bannon v. Port of Palm Beach District, 246 So.2d 737
(Fla. 1971).
[28] State v. Housing Finance Authority of Polk County,376 So.2d 1158, 1160 (Fla. 1979).