Dear Ms. Rey:
On behalf of the City of Brooksville, you have submitted a request for my opinion on substantially the following question:
Are the land use and zoning ordinances of the City of Brooksville applicable to real property located within the city and occupied and operated by a county fair authority?
In sum:
The land use and zoning ordinances of the City of Brooksville are applicable to real property located within the city and occupied and operated by a county fair authority.
According to your letter, the Hernando County Fair Association occupies a parcel of land within the corporate limits of the City of Brooksville and operates the fair at that location. The city questions whether local land use and zoning ordinances apply to the fair association in light of the state statutory regulations provided in Chapter 616, Florida Statutes.
Section 2(b), Article VIII of the Florida Constitution provides, in part that:
"Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law."
The Florida Supreme Court has stated that this constitutional provision "expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services."[1] The Court stated, inState v. City of Sunrise, that the only limitation on the power of municipalities under this constitutional section is that such power must be exercised for a valid municipal purpose. As determined by the Court, "[l]egislative statutes are relevant only to determine limitations of authority" and municipalities need no further authorization from the Legislature to conduct municipal government.[2]
Pursuant to section 166.021(1), Florida Statutes, municipalities are granted "the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." Subsection (3) of the statute prescribes limitations on the subjects that municipal legislation may address:
"The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
(a) The subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution;
(b) Any subject expressly prohibited by the constitution;
(c) Any subject expressly preempted to state or county government by the constitution or by general law; and
(d) Any subject preempted to a county pursuant to a county charter adopted under the authority of ss. 1(g), 3, and 6(e), Art. VIII of the State Constitution."
The relationship between local and state legislation was specifically discussed by the Florida Supreme Court in City ofMiami Beach v. Rocio Corporation:
"The principle that a municipal ordinance is inferior to state law remains undisturbed. Although legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation enacted by municipalities may not conflict with state law. If conflict arises, state law prevails. An ordinance which supplements a statute's restriction of rights may coexist with that statute, whereas an ordinance which countermands rights provided by statute must fail."[3]
Generally, a municipality has civil and criminal jurisdiction over property within its corporate boundaries and may regulate and restrict certain activities reasonably calculated to protect the public health, safety, and welfare.[4] Zoning and land use regulations come within the scope of this jurisdiction.
Section 616.01, Florida Statutes, authorizes the creation of a not-for-profit association within a county for the purpose of conducting and operating public fairs or expositions. A "[p]ublic fair or exposition" is defined as
"a fair or exposition not for profit for the purpose of the benefit and development of the educational, agricultural, horticultural, livestock, charitable, historical, civic, cultural, scientific, and other resources of the state, any county or counties of the state, or any municipality or other community of any county of the state."[5]
Each fair association has the power to
"hold, conduct, and operate public fairs and expositions annually and for such purpose to buy, lease, acquire, and occupy lands, erect buildings and improvements of all kinds thereon, and . . . to charge and receive compensation for admission to those fairs and expositions, for the sale or renting of space for exhibitions, and for other privileges; . . . to promote the progress of the geographical area it represents and serves and stimulate public interest in the advantages and development of that area by providing facilities for agricultural and industrial exhibitions, public gatherings, cultural activities, and other functions which the association determines will enhance the educational, physical, economic, and cultural interests of the public; and generally to do, perform, and carry out all matters, acts, and business usual or proper in connection with public fairs and expositions; but this enumeration of particular powers shall not be in derogation of or limit any special provisions of the charter of the association inserted for the regulation of its business, and the conduct of its affairs of creating, defining, limiting, and regulating the powers of the association or its officers or members. . . ."[6]
Moreover, section 616.11, Florida Statutes, authorizes associations to enter into contracts, leases, or agreements with any municipality or county for the donation or use and occupation by any association of land owned, leased, or held by such municipality or county. Counties and municipalities are authorized to make contributions of money or property to associations to be used for fair or exhibition purposes. Such appropriations were held to be constitutional as serving a proper purpose in Barnett Nat. Bank v.Thursby, an early Florida Supreme Court case.[7]
This office has, in previous opinions, concluded that fair associations are subject to local regulations requiring the payment of permit fees imposed pursuant to a municipal ordinance. In Attorney General Opinion 86-54, the Commissioner of Agriculture asked whether a fair association, incorporated under the provisions of Chapter 616, Florida Statutes, and operating under a permit granted by the Department of Agriculture and Consumer Services, was subject to a local ordinance requiring a permit and payment of a fee for conducting outdoor shows or assemblages in temporary structures. The ordinance required that the permit be procured from the city building inspection department. As a prerequisite to the issuance of the permit, the city police, fire, and building inspection departments and, where sanitary facilities were provided, the county health department were required to inspect the premises. The city zoning and traffic engineering departments were also required to review the permit application to ensure compliance with provisions of the city code.
As that opinion notes, municipal ordinances are inferior and subordinate to state law. Thus, an ordinance may not conflict with any controlling provision of a state statute. If any doubt exists as to the degree of power attempted to be exercised which may affect the operation of a state statute, the doubt must be resolved in favor of the statute and against the ordinance.[8]
Chapter 616, Florida Statutes, generally regulates public fairs and expositions held in this state.[9] However, nothing in Chapter 616, Florida Statutes, exempts fair associations from the reach of local zoning or land use ordinances or otherwise preempts land use regulation to the state under these circumstances. The Legislature clearly expressed its intent to exempt local fairs' associations from certain local regulation when it intended to do so. The applicability of local land use regulations and other local code provisions appears to be reflected in section 616.11, Florida Statutes, which authorizes fair associations to "enter into any contract, lease, or agreement with any municipality or county . . . for . . . the use and occupation by the association of any land owned, leased, or held by the county or municipality . . . on such terms as the county or municipality . . . may authorize[.]"
Therefore, in the absence of any state statute exempting fair associations from local land use regulations or preempting this area of legislation to the state, it is my opinion that the land use and zoning ordinances of the City of Brooksville are applicable to real property located within the city and occupied and operated by a county fair authority.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] State v. City of Sunrise,354 So. 2d 1206, 1209 (Fla. 1978).
[2] Supra at 1209. See also City of Miami Beach v. ForteTowers, Inc., 305 So. 2d 764 (Fla. 1974).
[3] City of Miami Beach v. Rocio Corporation,404 So. 2d 1066, 1070 (Fla. 3d DCA 1981), petition for reviewdenied, 408 So. 2d 1092 (Fla. 1981).
[4] See 64 C.J.S. Municipal Corporations s. 1816;Carter v. Town of Palm Beach, 237 So. 2d 130 (Fla. 1970); Ops. Att'y Gen. Fla. 90-37 (1990), 85-47 (1985), 79-71 (1979), 77-139 (1977), and 60-139 (1960).
[5] Section 616.001(10), Fla. Stat.
[6] Section 616.08, Fla. Stat.
[7] 150 So. 252 (Fla. 1933). Accord Op. Att'y Gen. Fla. 69-118 (1969). See also Op. Att'y Gen. Fla. 77-25 (1977).
[8] See City of Miami Beach v. Rocio Corp.,404 So. 2d 1066 (Fla. 3d DCA 1981), petition for reviewdenied, 408 So. 2d 1092 (Fla. 1981); Rinzler v. Carson,262 So. 2d 661 (Fla. 1972); Ops. Att'y Gen. Fla. 87-21 (1987), 86-54 (1986), and 79-71 (1979).
[9] See, e.g., Part II, Ch. 616, Fla. Stat. (trade and safety standards for operation of public fairs and expositions); ss. 616.15 (permit from Department of Agriculture and Consumer Services required); 616.17 (display of minimum exhibits); and 616.12(1), Fla. Stat. (licenses upon certain shows required).And see s. 616.01, Fla. Stat., providing for the formation of a not-for-profit association for the purpose of conducting and operating public fairs or expositions for the benefit and development of the educational, agricultural, horticultural, livestock, and other resources of the state or county or counties of this state.